WOODROW WILSON WOOTEN, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

(*Jackson,* April Term, 1958.)

Opinion filed May 2, 1958.

Hughie Ragan, Jackson, for plaintiff in error.

James M. Glasgow, Assistant Attorney General, for the State.

Mr. Justice Swepston delivered the opinion of the Court.

Plaintiff in error, Woodrow Wilson Wooten hereinafter called defendant, was convicted of burglary with explosives and was sentenced to 25 years in the State Penitentiary. He has appealed and assigned numerous errors. We shall not treat them separately but only to the extent necessary to reach the merits of the appeal.

On the night of September 26, 1957, the Dr. Pepper Bottling Plant, a business building in Jackson, Madison County, Tennessee, belonging to one M. C. Jolly, was broken into and by means of explosives the money safe was opened and more than $500 in money was taken. The burglary was discovered about 8:00 o'clock the next morning by the owner and it was evident from the damaged condition of the safe, the office and part of the office fixtures that a crime had been committed and simple inspection of the inside of the safe disclosed the absence of the money. Further investigation by the owner and the Jackson police disclosed that a number of checks and other papers had been removed and scattered around in the back of the premises and shortly afterwards they went to a motel located on the adjoining property, where they discovered in a certain room that some of these papers with Mr. Jolly's name thereon had been torn up and dropped in the commode but the same had not been flushed down; among these was a receipt to Mr. Jolly for six-dollars' worth of tickets to the Shrine Club Circus.

By examination of the motel records, it was disclosed that this room or cabin had been occupied by an individual who gave his name as Paul Abner of 621 Central Avenue, Hot Springs, Arkansas, and his car license number as taken down by the motel clerk appeared on the registration card as 9B167. There was also found in this

room grass and mud on the floor and a dirty face towel which had some substance on it and wrapped up in it that appeared to be both mud and another substance that was not easily identified.

About the middle of December on a date not otherwise shown except by the testimony of defendant who said it was Saturday, December 14, he was arrested in Memphis, the Jackson police were notified and on Sunday, the 15th, in the presence of two Jackson police officers and two Memphis police officers, defendant made a written confession. He stated that he went to Jackson on September 25, rented a room at said motel, registering under the name of Paul Abner; that he climbed the fence between the motel and the bottling plant and when he reached the rear of the plant, he found a window unlocked through which he entered. He then took a hammer and knocked an arm off the safe and the combination on the door and inserted nitroglycerin, lit a fuse and then on account of his suspicion that the safe contained a tear gas bomb, he went outside the building back to his motel room and returned several hours later when he took the contents of the safe. He admitted putting the papers in the commode and stated that in his hurry to get away he forgot to flush the commode and that after he had been gone some time he thought of it but he was afraid to go back.

Then after he had been transferred from Memphis to the Jackson jail, Mr. Jolly accompanied by an employe and a Jackson police officer went to see him in the jail. He became talkative and stated to Mr. Jolly that he was sorry for what he had done, that he had no hard feelings against him personally and advised him to put his safe in a different location in the building where it would be

in the light (and more easily observed from the outside presumably).

The police took from his person his Arkansas driver's license dated August 10, 1957, which was in the name of Harry Paul Abner, Hot Springs, Arkansas. It was also developed that his car license was 913167, which quite evidently the motel clerk read to be 9B167.

The first two assignments of error relate to whether there is any evidence to support the verdict and to the preponderance of the evidence and counsel for defendant frankly concedes that if these confessions were properly admitted into evidence, these two assignments must be overruled.

When the written confession taken by the police officers in Memphis was offered in evidence, objection was made in behalf of the defendant. Thereupon the jury was excused and the trial judge heard the testimony of the two Jackson Officers, Lt. Davis and Sgt. Alderson. They both testified that the confession was freely and voluntarily given and that no promises of any kind were given to the defendant and that he was advised, as the written statement shows, that the statement could be used against him. On the other hand, the defendant testified that he was arrested on Saturday afternoon and was continually questioned all through the night until the next day and that the Memphis officers, before the Jackson officers arrived, had told him that he could not get more than three to ten years and that if he would come clean he might get as little as 11 months and 29 days for third degree burglary, and particularly he testified that those same officers were present when Sgt. Alderson, the Jackson

officer, took the statement from him and that the Memphis officers repeated the same promises in the presence of Sgt. Alderson and that a Capt. Wilson, who does not appear by any other testimony or from the confession itself to have been present, said that if he would sign the confession he would not have to go back to Kentucky, where he was a parole violator on a life sentence for murder. He further testified that Mr. Alderson took his hands and made a sign and said, "If you sign the confession you won't get over three to ten and I'll talk to the judge and attorney general", and that he said, "I can depend on that?" And Alderson said, "Yes sir". Then he said that Alderson said that he just wanted to get the thing straightened up to satisfy the people down at Jackson and he then told Alderson he was making this statement because he had received a life sentence in Kentucky and he did not want to go back there and he was making the statement on the promise that he would not get more than three to ten years.

Then with reference to Mr. Jolly's statement about the voluntary statement made to him, the defendant denied that he admitted any guilt to Mr. Jolly and he said that he did not know anything about Mr. Jolly's safe except what he learned from the police officers, although he admitted that he did give Mr. Jolly the advice about where to locate his safe.

The trial judge, after hearing the conflicting testimony, ruled against the defendant and admitted the confessions into evidence.

The first point insisted upon by defendant is that, since none of the police officers from Memphis were called to

testify, it *must* be presumed that their testimony would be unfavorable to the State. Counsel is mistaken, however, in the use of the word "must". The rule is that it may give rise to such a presumption or inference. The rule is stated in various ways as, for instance, in *Waller v. Skeleton,* 31 Tenn.App. 103, 212 S.W. 2d 690, 697, the expression is "affords an inference". In *Craig v. Marquette Cement Mfg. Co.,* 190 Tenn. 234, 237, 229 S.W. 2d 148, 149, the expression is "gives rise to a strong presumption". In *Kidd v. Tennessee Gas Co.,* 33 Tenn.App. 302, 231 S.W. 2d 793, the expression is "a presumption arises".

The true rule, however, is stated in 31 C.J.S. Evidence sec. 156, p. 850, where it is said:

> "*Force of presumption.* The unfavorable presumption or inference arising from the withholding of evidence is not conclusive against the party, but is merely a fact for the consideration of the jury; and such failure cannot be relied on by the other party as affirmative proof of facts as to which the burden of proof is on him. * * *""

And again on page 863, it is said:

> "*Strength of inference.* The inference arising from the failure of a party to testify does not take the place of evidence of material facts, or shift the burden of proof as to relieve the party on whom rests the duty of establishing a *prima facie* case. Moreover, there is no rule which binds the jury to look to the inference to the exclusion of or as negativing, positive testimony.

> "However, the failure of a party to appear or to testify is a circumstance to be considered by the court

or jury in the determination of questions of fact on which the testimony of the party would have shed light, * * *.''

██ Moreover, the testimony of the Memphis officers would have been merely cumulative in this instance because defendant testified that the Memphis officers repeated these statements in the presence of Sgt. Alderson and that Sgt. Alderson made certain statements by way of promise and inducement to him, whereas Sgt. Alderson and Lt. Davis, testified exactly to the contrary. In short, there was a conflict of evidence and the trial judge resolved it against the defendant and the defendant is here on appeal under the burden of showing that the evidence preponderates against the finding of the trial judge and the burden has not, in our opinion, been met.

█ Again, it is insisted that the *corpus delicti* can not be proved by the confession alone. That is certainly a sound statement of law. However, it may be well to call attention to the definition of the *corpus delicti*. It is made up of two elements (1) that a certain result has been produced, for example, a man has died or a building has been burned, and (2) some person is criminally responsible for the act. 14 Am.Jur., 758, Sec. 6. This is the definition of the *corpus delicti* which pervades our own cases. *Taylor v. State,* 191 Tenn. 670, 680, 235 S.W. 2d 818, quoting from *Ashby v. State,* 124 Tenn. 684, 139 S.W. 872. In the statement of facts in the fore part of this opinion, it is pointed out those facts that clearly established that a crime had been committed which appeared from the condition of things in the place of business of the Dr. Pepper Bottling Company office.

▮ Then, of course, the defendant is connected with this crime by several matters. There is the receipt for the Shrine Circus tickets in Mr. Jolly's name and other paper with the name of Dr. Pepper Bottling Company on it found in the commode in the room occupied by this man who has been identified as being the one who was there on that night along with the grass and the muddy face towel belonging to the motel room which was occupied by the defendant; and then there could be no question that the statements made by the defendant to Mr. Jolly were freely and voluntarily made, because there could have been no objective on the part of Mr. Jolly to obtain any confession for the reason that the written confession had already been obtained in Memphis before Mr. Jolly saw the prisoner. It is, therefore, perfectly clear that the *corpus delicti* and the connection of the defendant with the crime were established independently of the confession taken in Memphis. We are, therefore, of opinion that these assignments must be overruled.

▮ By other assignments the argument of the attorney general is attacked because he stated to the jury that this man should not be allowed to go free and that he should be found guilty among other things so as to deter others. When objection was made on behalf of defendant, the attorney general stated that he understood punishment is to punish the guilty and to deter others from committing crimes. Again, the attorney general said, "I can't think of any more gross miscarriage of justice than for this man here to be turned loose. There is no question about it."

So long as the attorney general does not indicate that he bases his opinion on something not appearing in the

evidence, we see nothing wrong with those statements. A number of our cases have been cited but an examination of them shows that the facts were entirely different from the situation in this case.

■ By another assignment, it is objected that the following charge was almost identical with that we disapproved in *Espitia v. State,* 199 Tenn. 696, 288 S.W. 2d 731, 732, and that, therefore, the case should be reversed. The language in the present charge was as follows:

"What the proof may show you, if anything, that the defendant has said against himself is admissible against him and may be considered along with all the other facts and circumstances in the case in the manner heretofore explained to you but anything he has said in his own behalf you are not obliged to believe but you may treat the same as true or false when considered with a view to all the other facts and circumstances in the case."

The defect in the charge in the Espitia case was that the jury was told that they must believe anything that the defendant had said against himself was true, whereas anything he had said in his own behalf they were not obliged to believe but may consider it true or false in the light of all the facts and circumstances. The language of the charge in the instant case does not contain that fault and the assignment is overruled.

■■ Lastly, it is sought to apply the rule of *Webb v. State,* 140 Tenn. 205, 203 S.W. 955, 15 A.L.R. 1034, which is reiterated in *Bishop v. State,* 199 Tenn. 428, 287 S.W. 2d 49, to the effect that where the case depends entirely on circumstantial evidence, it is fundamental that the

court must give a charge on circumstantial evidence whether seasonably required by counsel for the accused or not. Defendant insists that, if there was any evidence to establish the *corpus delicti* and to connect the defendant with the commission of the crime, it was entirely circumstantial and that, therefore, the rule of *Webb. v. State* applies. We do not think so, because when the trial judge ruled that these confessions, both the judicial and the extra-judicial, were admissible in evidence, then those confessions became direct evidence and made it necessary for the defendant to request an instruction on circumstantial evidence if he desired to have it given.

Lastly, complaint is made that the judge erred in charging the jury with reference to the confessions that it was first his duty alone to determine from all the circumstances whether or not the confessions should be admitted into evidence but that having done so, it then became their sole and exclusive province to judge of the credibility of the confessions.

We see no error in this because that is the common function of the judge with reference to all questions of admissibility of evidence; by ruling that evidence is admissible and competent, the judge does not imply to the jury that they must believe it to be true just because the evidence is allowed to go in; he rules in the presence of the jury that it is competent, then in the charge he tells the jury that they are the sole and exclusive judges of the facts and of the credibility of the witnesses.

We, therefore, are of opinion that there is no error and that the judgment of the lower court must be affirmed.