ELBERT McCOY HANVY, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

385 S.W.2d 752.

(*Nashville,* December Term, 1964.)

Opinion filed January 6, 1965.

J. Brad Reed, Nashville, for plaintiff in error.

George F. McCanless, Attorney General, Marne S. Matherne, Assistant Attorney General, for the State.

Mr. Justice White delivered the opinion of the Court.

Hanvy was convicted of forgery and passing forged papers by means of which he obtained the sum of $42.80. The jury returned a verdict of guilty and sentenced him to be confined in the county workhouse for eleven months and twenty-nine days, and assessed a fine against him in the amount of $50.00. In due course he filed a motion for a new trial, which was overruled. He appealed to this Court and assigns error.

Responding to statements made in a written application to the Court that he was a poor person without means for employing counsel, we entered an order appointing J. Brad Reed, of the Nashville Bar, to represent him on appeal. He has carried out his assignment in a most commendable manner.

The facts in the case are that sometime prior to January 14, 1964, Marion Construction Company was burglarized and about thirteen company checks were stolen. One of these checks, in the amount of $42.80, payable to Charles Carney and signed, Marion Construction Company, by Leroy Odie, was cashed in a Nashville grocery store on January 14, 1964. The check is exhibited in the record. The clerk in the store who cashed the check testified that the defendant wrote the name "Charles Carney" on the back of the check in his presence. Thereafter, the police exhibited some pictures of the defendant to the witness and he had no difficulty in identifying the defendant from the pictures. He also identified the de-

fendant in the courtroom on the trial of the case as being the same person who presented the check to him.

"Leroy Odie" is not identified in the record, except that an official of Marion Construction Company testified that no person by that name worked for his company and no such person had authority to sign a check on behalf of the company, and that said check was a forgery.

The defendant did not take the witness stand. His mother and his wife testified in support of an alibi to the effect that the three of them, and the couple's four children, ate supper together at the defendant's home on the night of January 14, 1964, and that they were together from 5:00 to 10:00 o'clock, P.M. on said date. The witness Powell said that the check was cashed by him between 6:00 and 7:00 o'clock, P.M., on that date.

On cross-examination the defendant's wife was asked:

"Mrs. Hanvy didn't you admit to Mr. Fred Newman, the Probation Officer, that you helped spend One Thousand ($1,000.00) Dollars in stolen money about ten years ago, knowing it was stolen "

Prompt objection was registered to this question and a motion for a mistrial was made. The matter was argued in the absence of the jury, but upon its return the court instructed the witness to answer, and her answer was "No". The motion for a mistrial was also overruled.

Mr. Fred Newman was called by the State as a rebuttal witness. He testified that he was the Probation Officer for Davidson County and that "about ten years ago he had talked with Mrs. Hanvy and that she told him that she had helped spend $1,000.00 in stolen money."

The plaintiff in error contends that (1) the verdict of the jury is not supported by the evidence and that such

evidence is contrary to the law and the evidence. We do not find it necessary to pass upon these questions because we feel compelled to reverse and remand the case for a new trial based upon another assignment of error to the effect that:

"* * * the Court should not have allowed the Attorney General to ask the defendant's wife a question which violated the privilege of confidential communications between spouses; that is, in asking the defendant's wife whether she had on a previous occasion helped the defendant dispose of money he had stolen."

We have examined the narrative bill of exceptions and find that the question actually asked by the Attorney General was in these words:

"Mrs. Hanvy didn't you admit to Mr. Fred Newman, the Probation Officer, that you helped spend One Thousand ($1,000.00) Dollars in stolen money about ten years ago, knowing it was stolen?"

■ ■ As set out hereinabove, her answer to this question was "No". There is a discrepancy in the form of the question as set out in the motion for a new trial and as contended for in the brief filed on behalf of the plaintiff in error, and as it appears in the bill of exceptions. We are bound, of course, by the question as it appears in the bill of exceptions and we reject the question as it appears in the motion for a new trial and in the brief. A motion for a new trial is only a pleading and no evidence or proof of the truth of the fact asserted. *State v. Fowler*, 213 Tenn. 239, 373 S.W.2d 460 (1963); *Dupes v. State*, 209 Tenn. 506, 513, 354 S.W.2d 453 (1961); *Sherman v. State*, 125 Tenn. 19, 51, 140 S.W.209 (1911).

The record shows that Mr. and Mrs. Hanvy had been married for a period of fourteen years and they were the parents of four children.

The question of whether Mrs. Hanvy had helped spend $1,000.00 in stolen money about ten years ago, knowing it was stolen, is within the limits of the period of their marriage. From reading the record we can only conclude the question was asked for the purpose of convincing the jury that the defendant had been guilty of stealing $1,000.00 about ten years before, and that Mrs. Hanvy had helped him spend it.

The only other purpose of the question would be to impeach the testimony of Mrs. Hanvy. In reference to these two matters, the brief filed on behalf of the plaintiff in error, through his court-appointed counsel, says that confidential communications between a husband and wife cannot be introduced in a criminal trial of either spouse.

In *McCormick v. State,* 135 Tenn. 218, 228, 186 S.W. 95, L.R.A.1916F, 382 (1916), it was held that sound public policy requires that neither the husband nor the wife shall be permitted to testify, in criminal cases, as to any matter coming to his or her knowledge by reason of the marital relation. The sacredness of the home and the peace of families can only be preserved and protected by enforcing this long established rule of the common law.

In *Cavert v. State,* 158 Tenn. 531, 14 S.W.2d 735 (1928), the Court said:

"Unquestionably, the testimony of Mrs. Cavert against her husband was incompetent, because it related to matters that grew out of the marital relation, or to transactions between herself and husband, or to infor-

mation acquired by her as a result of the marital relation." (158 Tenn. at 542, 14 S.W.2d at 739.)

It is necessary then to determine whether expressly connecting the plaintiff in error in the form of the question would violate the privilege of confidential communications. We think it did in this case. Actions, as well as oral communications, are protected in Tennessee so long as the element of relationship of husband and wife exist.

In *McCormick v. State,* supra, the Court quotes with approval the statement made by the Supreme Court of Florida that the privilege

"* * * should not be confined to mere statements by one to the other, but embraces all knowledge upon the part of either obtained by reason of the marriage relation, and which, but for the confidence growing out of it, would not have been known."

In *Cavert v. State,* supra, the testimony of the wife that her husband operated a still near their home was held to be incompetent.

In *Perry v. Randall,* 83 Ind. 143, 145 (1882), the Indiana Supreme Court held incompetent the testimony of the wife of the defendant that she had watched her husband steal money, had helped him count it, and had watched him take it away.

In *People v. Gessinger,* 238 Mich. 625, 214 N.W. 184 (1927), it was held to be reversible error to allow the defendant's ex-wife to testify to the existence of stolen property in their home. So, also, the New York Court of Appeals has held that the defendant's wife could not testify that she saw the defendant bringing home certain

articles of property in the early morning hours and concealing them throughout the house. *People v. Daghita,* 299 N.Y. 194, 86 N.E.2d 172, 174, 10 A.L.R.2d 1385 (1949).

Moreover, in *Menefee v. Commonwealth,* 189 Va. 900, 55 S.E.2d 9 (1949), defendant's wife had testified that she, after the robbery had been committed for which her husband has being tried, two or three times had driven her husband to an area in which a stolen safe was later found. The Virginia Court held this to be prejudicial error.

■ ■ The defendant, exercising his constitutional rights, failed to take the witness stand and no conclusion of his guilt is to be drawn from such conduct. Such failure did, however, deny an opportunity to the State to test the credibility of the testimony of the defendant by asking him about his prior conduct. Apparently the only way the defendant's prior record could be brought before the court under the circumstances was to ask his wife whether she had, in effect, helped him dispose of $1,000.00 of stolen money. The question was not asked in this way, but the jury concluded, no doubt, from the form of the question that the defendant had stolen money and his wife had assisted him in disposing of it. We think the asking of the question under such circumstances is clearly reversible error for the reason that it sought indirectly to elicit from the wife some confidential information that the question implies came to her through the marital relation with the defendant.

■ ■ We think that another valid reason for the reversal of this case is found in the action of the court in permitting the introduction of rebuttal evidence to controvert Mrs. Hanvy's negative answer to the question set out.

The question as asked was not whether Mrs. Hanvy had been convicted of a crime, but rather had she admitted to a Probation Officer that she had committed a crime. It is obvious to us that the question was asked for the purpose of laying a foundation for introducing the testimony of Mr. Fred Newman, the Probation Officer of Davidson County. Of course, the introduction of the testimony of the Probation Officer indicates within itself that the witness or the defendant had been in the throes of the law on prior occasions.

It is the well settled law of this State that when specific acts involving the moral turpitude of a witness are questioned the court is bound by the answer. Other witnesses may not testify so as to contradict a witness who has denied alleged prior wrongdoings unless such wrongdoing is relevant to the matter in issue in the case. *Gray v. State,* 191 Tenn. 526, 531-533, 235 S.W.2d 20 (1950); *Zanone v. State,* 97 Tenn. 101, 36 S.W. 711, 35 L.R.A. 556 (1896); *Franklin v. Franklin,* 90 Tenn. 44, 49, 16 S.W. 557 (1891); and 2 Tenn.L.Rev. 165 (1923).

The reasons for the foregoing rule are well known and need not be repeated here, but it is sufficient to say that if the testimony of witnesses may be impeached in such a manner, then a trial may continue *ad infinitum.*

■ On the question of whether or not the errors assigned above were harmful to the defendant, we need only to look at the verdict of the jury assessing a fine of $50.00 and confinement in the county workhouse for eleven months and twenty-nine days for securing the sum of $42.80 by means of a forged check. The punishment, of course, is within the limits of the law, but is out of the

ordinary when considered in relation to other cases of like import.

Reversed and remanded.

BURNETT, CHIEF JUSTICE, DYER and HOLMES, JUSTICES, and CLEMENT, SPECIAL JUSTICE, concur.