J. P. Hawkins

*v.*

State of Tennessee.

417 S.W.2d 747.

(*Nashville*, December Term, 1966.)

Opinion filed July 28, 1967.

384

John H. Poteet, Marvin E. Snow, Elmer D. Langford, and E. A. Langford, Cookeville, for plaintiff in error.

George F. McCanless, Attorney General, and Robert F. Hedgepath, Assistant Attorney General, Nashville, for the State. Baxter Key, District Attorney General, Carthage, prosecuted the case for the State in the trial court.

Mr. Chief Justice Burnett, delivered the opinion of the Court.

The parties will hereinafter be referred to as they were in the trial court; to-wit, as the defendant and the State.

This appeal is perfected from the Criminal Court of Putnam County, Tennessee, wherein the defendant, J. P. Hawkins, was convicted for the voluntary manslaughter of one Herbert Ford. The defendant's punishment was fixed at two (2) years in the State penitentiary.

The pertinent events which caused the indictment and conviction in question are, as follows:

For many years prior to July 12, 1965, the defendant and the deceased, Herbert Ford, were engaged in a constant feud concerning their adjoining property boundaries. The record reflects that the parties frequently had arguments in which various threats were exchanged.

On July 12, 1965, the defendant and the deceased encountered one another in a garbage dump which was owned by the deceased and operated on behalf of the city. An altercation ensued which ultimately resulted in the fatal wounding of the deceased. The defendant was also wounded by has recovered satisfactorily.

The evidence is disputed as to which party initiated the gun battle. The theory of the State is that, on the day in question, the decedent and his son, Kenneth Ford, were proceeding to the dump where they intended to shoot stray dogs which were left there by the city police. For this reason, the deceased had a rifle in his possession. Unexpectedly, they encountered the defendant who was searching for a missing cow. After a moment's argument the defendant and the deceased agreed to go into the dump to look for the cow, when suddenly, as they were walking, the defendant drew a pistol and shot the deceased in the back. Noting that the defendant was then shooting at Kenneth Ford, the deceased raised on his elbow and shot the defendant.

Counsel for the defendant insist that this theory is inaccurate. Instead, it is argued that at the time of their meeting in the dump, the deceased attempted to force the defendant to walk in front of him into the dump. When the defendant refused, the deceased shot the defendant.

As a result of this incident the defendant was indicted and subsequently convicted of voluntary manslaughter, for which he was sentenced to two years in the State penitentiary. From the trial court's denial of defendant's motion for a new trial, an appeal has been seasonably perfected to this Court.

██ By the first assignment of error counsel for the defendant contend that the evidence is insufficient to support the verdict. In reviewing this assignment, we are guided by the well established principle that the verdict of the jury, when approved by the trial judge, accredits the testimony of the State and resolves all conflicts in favor of the State. Furthermore, the defendant is presumed guilty and has the burden of proving that the evidence preponderates in favor of his innocence and against his guilt. See *Bacon v. State*, 215 Tenn. 268, 385 S.W.2d 107; *White v. State*, 210 Tenn. 78, 356 S.W.2d 411; and *Anderson v. State*, 207 Tenn. 486, 341 S.W.2d 385.

Considering the record, it appears that Kenneth Ford, the decedent's son, testified that on the day of the incident he and his father were enroute to the dump to shoot dogs, at which time they encountered the defendant. The parties started walking into the dump to search for the defendant's cow when, according to Kenneth, "Mr. Hawkins stopped and said, 'I mean to end this right here and

now' and pulled out the pistol and shot daddy in the back.''

In addition, Mr. Walter Huddleston, a previous employee of the defendant, stated that he had heard the defendant say that he had helped get rid of the deceased. Furthermore, the deceased's brother testified that the defendant had on one occasion declared that he was going to have to shoot the deceased.

█ In view of this testimony and that to be considered in the next assignment of error, this Court is of the opinion that the verdict is adequately supported by the evidence. Consequently, the first assignment is overruled.

The defendant's next assignment of error asserts that the trial court erred by allowing the State to introduce into evidence the dying declaration of the deceased. This declaration was made while the deceased was hospitalized and shortly before his death, and was admitted through the following examination of his wife, Mrs. Ford:

"Q. If you will, Mrs. Ford, just tell the court and jury in your own words what was said and repeat the exact words that he said insofar as you can remember them.

"A. Well, he said, Honey, I'm not going to make it, he said I want you to get the Flatts and Jared Maddux for your lawyers, and he said, I want you to do the very best you can and sell the mules. He said, J. Hawkins and them two boys come down there on me; said, J. Hawkins shot me in the back, and he said that Smithers boy has shot me, Magdalene, and I don't even know who he was * * * If I ever seen that boy in my life, I don't know it. He said Wayland beat me with a big

stick, and he said I never done nothing to them. I never did bother them.

"Q. I'll ask you whether or not he made any statement relative to the shooting of J. P. Hawkins?

"A. Yes sir, he said when he shot at Kenny, he raised on his elbow and shot him.

"Q. Did he say whether or not that was before or after he had been shot?

"A. It was after he had been shot, yes sir. He was laying on the ground; he said he raised up on his elbow and shot him when he shot at Kenny."

█ Concerning this dying declaration, it is first insisted that the admission of such a statement violates the defendant's constitutional right to face his witnesses. This question has been previously decided by the courts of this State as well as those in other jurisdictions, which have held that the constitutional right of an accused to face his witnesses is not encroached upon by the admission into evidence of dying declarations. See, e. g. *Anthony v. State,* 19 Tenn. 265, 33 Am.Dec. 143 [1838]; see also, 40 C.J.S. Homicide sec. 287, p. 1251, note 22, for citations from other jurisdictions.

Furthermore, it is insisted by counsel for the defendant that the declarations of the deceased fails to meet the requirements necessary to be admissible under the dying declaration exception to the hearsay rule. We cannot agree.

█ The rule is that declarations of one whose death subsequently results from an unlawful act, made while in extremis, and fully conscious of his condition, and with belief in his impending death, which tend to implicate as the assailant, a person accused of the homicide, are ad-

missible as evidence in a trial for the decedent's homicide. See, *Still v. State,* 125 Tenn. 80, 140 S.W. 298; *Lemons v. State,* 97 Tenn. 560, 37 S.W. 552; and *Sherman v. State,* 125 Tenn. 19, 140 S.W. 209. Upon consideration of the record, we are convinced that the conditions of dying declarations, as set out above, have been satisfied in the case at bar. Not only did the deceased state that he did not expect to live, but he specifically instructed his family as to what course of action to follow upon his death. As stated in *Helton v. State,* 195 Tenn. 36, 255 S.W.2d 694, certiorari denied 346 U.S. 816, 74 S.Ct. 28, 98 L.Ed. 343, in determining the sense of impending death necessary to make a statement of a victim admissible in evidence as a dying declaration, the court may look to the language of the deceased or infer from the character of the wounds as showing the consciousness of impending death. Based on this, we believe that the evidence clearly demonstrates that, at the time the dying declaration was made, the deceased was completely cognizant of his impending death.

It is a rule of this Court that there can be no reversal of a trial court for admitting a dying declaration except for a manifest error. See *Crawford v. State,* 197 Tenn. 411, 273 S.W.2d 689. After due consideration of defendant's contention, we find that the admission of this declaration was not an error of such magnitude as would justify a reversal of this case.

Assignments of error III, IV, V, VII and VIII all relate to remarks made by the State's attorney during the closing arguments. Unfortunately, this Court is precluded from considering these assignments inasmuch as the argument of counsel is not preserved in the bill of exceptions. The fact that these comments are included

within the defendant's motion for a new trial does not cure the defect. This Court has frequently declared that a motion for a new trial is a mere pleading and does not take the place of a bill of exceptions. See e.g., *Sherman v. State,* supra; *Wynn v. State,* 181 Tenn. 325, 181 S.W.2d 332; *Dupes v. State,* 209 Tenn. 506, 354 S.W.2d 453; *Koehn v. Hooper,* 193 Tenn. 417, 246 S.W.2d 68; and *Fonte v. State,* 213 Tenn. 204, 373 S.W.2d 445.

The final assignment of error is that the trial court erred in failing to grant the defendant a new trial on the basis of newly discovered evidence. In this regard, it is urged that, essential to the conviction of the defendant, was a reasonable explanation by the State as to why the deceased was armed with a rifle on the day in question. Testifying on behalf of the State, Kenny Ford stated that on the day in question he and his father were proceeding to the dump where they intended to shoot stray dogs which had been left there for that purpose by city policemen. On their motion for a new trial, counsel for the defendant offered for the first time statements by the City Manager of Cookeville and two city policemen to the effect that the deceased had no direction from the city to kill the dogs. Furthermore, the officials stated that it was customary for the police department to perform this task. It is insisted that these statements refute the State's theory and should therefore necessitate the granting of a new trial to the defendant.

The granting or refusing of a new trial upon the basis of newly discovered evidence rests within the sound discretion of the trial court. *Moore v. State,* 96 Tenn. 209, 33 S.W. 1046. Considering the nature of the so-called newly discovered evidence in the case at bar, we do not think that the trial court manifestly abused its

discretion in denying the defendant's motion. In the first place, this newly discovered evidence is merely contradictory and impeaching evidence, which does not necessarily justify the granting of a new trial. See *Harper v. State,* 206 Tenn. 509, 334 S.W.2d 933; *McGhee v. State,* 183 Tenn. 20, 189 S.W.2d 826, 164 A.L.R. 617; *Vest v. Bitner,* 34 Tenn.App. 575, 241 S.W.2d 438; *Monday v. Millsaps,* 37 Tenn.App. 371, 264 S.W.2d 6. Furthermore, the record reflects that each witness who testified concerning this matter was available on the day of the trial; however, none were subpoenaed on behalf of the defendant. This Court has frequently held that it is not error for a trial court to deny a new trial on the basis of newly discovered evidence where it appears that reasonable diligence has not been exercised in the procurement of witnesses at the original trial. *Leonard v. State,* 155 Tenn. 325, 292 S.W.2d 849; *Taylor v. State,* 180 Tenn. 62, 171 S.W.2d 403. We believe that through reasonable diligence the testimony in question could have been made available at the present trial. Accordingly, this assignment of error is overruled.

In summary, we hold that the defendant has received a fair and impartial trial, and there is no error in the record which would justify a reversal of his conviction. Therefore, the judgment of the trial court is affirmed.