JAMES MITCHELL, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

464 S.W.2d 307.

Court of Criminal Appeals of Tennessee. Jan. 19, 1971.

Certiorari Denied by Supreme Court March 1, 1971.

Hugh W. Stanton, Jr., Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Jewett H. Miller, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

## OPINION

OLIVER, Judge.

James Mitchell, the defendant below, represented in his trial by retained counsel and here by the Shelby County Public Defender appointed by the court, was convicted of armed robbery in the Criminal Court of Shelby County and was sentenced to imprisonment for 15 years in the State Penitentiary. He is now before this Court upon his appeal in the nature of a writ of error duly perfected.

At the time of the robbery on 16 December 1967 the defendant was only 17 years of age. By order entered on 20 December 1967, after conducting an investigation

and hearing, the juvenile court of Memphis remanded the defendant to the Criminal Court of Shelby County for disposition as an adult.

On 28 December 1967 the defendant and Edward Eugene Douglas and Larry McHenry were jointly indicted for the armed robbery of Johnny L. Marcellini. Subsequently Douglas and McHenry were convicted upon their pleas of guilty and, upon motion of the defendant were returned from the penitentiary to be available as defense witnesses in this case.

The first five Assignments of Error challenge the sufficiency of the evidence, the defendant's insistence being that it preponderates against the verdict of the jury and in favor of his innocence. In reviewing the evidence under these Assignments, we are bound by the rule, stated and restated over and over by our Supreme Court and this Court, that a jury's verdict of guilt, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in the evidence in favor of and establishes the State's theory of the case. Under such a verdict, the presumption of innocence, which the law accords an accused prior to conviction, disappears and is replaced by a presumption of guilt which puts upon him the burden of showing upon appeal that the evidence preponderates against the verdict and in favor of his innocence. We may review the evidence only to determine whether it preponderates against the verdict and, in doing so, we must take the verdict as having established the credibility of the State's witnesses. The verdict will be disturbed on the facts only if the evidence clearly preponderates against it and in favor of the innocence of the accused. Gulley v. State, 219 Tenn.

114, 407 S.W.2d 186; Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, Tenn.Crim.App., 425 S.W.2d 799; Brown v. State, Tenn.Crim.App., 441 S.W.2d 485.

The rule that the credibility of the witnesses and conflicts in the testimony are all settled by the verdict of the jury, "makes unnecessary and, indeed, inappropriate, a detailed discussion of that evidence, pro and con, * * * in stating what we conclude the material facts to be as established by that testimony." Hargrove v. State, 199 Tenn. 25, 28, 281 S.W.2d 692, 694; Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237.

We summarize the material evidence obviously accredited by the jury. After closing their grocery store on Saturday night December 16, 1967 shortly after 9:00 o'clock, Johnny L. Marcellini and his wife, who expired prior to the trial, drove to their Memphis home. When they stopped in the garage driveway, they were set upon by three Negro men who emerged from hiding alongside the garage, one of them going to one side of the car and the other two to the other side. Two of them were masked. Marcellini later identified the unmasked robber as Douglas. When Mrs. Marcellini began screaming and trying to get out of the car, "some of them shoved her to the ground and tried to choke her—she never did get to the neighbors," and then put her back in the front seat of the car. One of the men had a .22 caliber pistol and the other had a bowie knife with which they menaced and threatened Mr. and Mrs. Marcellini. They forced him into the rear seat of a station wagon which one of them brought upon the scene. There they robbed him of $292 in bills, between three and four dollars in change,

his pocket knife, cigarette lighter, car keys, a carton and a half of cigarettes, and a small notebook. When Mrs. Marcellini apparently became hysterical and started screaming again, one of the robbers struck her across the face. They then marched their victims behind the garage where they tied and bound Mr. Marcellini with black neckties. Apparently called by neighbors alerted by the commotion, policemen converged on the scene. One of the fleeing bandits fired a pistol one time, and the officers returned the fire. Two or three of the officers found the three men, the defendant and McHenry and Douglas, hiding in shrubbery nearby. In the immediate area, the officers found a mask, a towel cut to form a mask, a bowie knife, a sweater, and a .22 pistol which had been fired once and contained three live cartridges. On two of the men the officers found some of Marcellini's property, including his billfold, cigarette lighter and pocket knife.

After being fully advised at the scene concerning his constitutional rights, the defendant said he was involved in the robbery, but the police officer advised him, "just wait until you get to headquarters and you can talk to the Robbery Bureau 'cause we don't have anything to do with it, we just transfer you." The next day, Sunday, after being advised again concerning his constitutional rights in keeping with the mandate of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the defendant was interrogated by an officer of the Memphis Police Department and freely admitted his participation in the robbery, stating that he wore a mask because he knew that Mr. Marcellini knew him, and that he handled the pistol part of the time. He had known Marcellini since he was a small boy and had worked for

him some at odd jobs occasionally. The following day, Monday, in the presence of Mr. and Mrs. Marcellini, the defendant again was advised of his rights and again admitted his participation in the robbery, recounting how he sat in the Marcellini automobile with Mrs. Marcellini while his companions robbed Mr. Marcellini.

Testifying in his own behalf, the defendant denied any participation in the robbery, denied being at the scene, denied being found hidden in the shrubbery with McHenry and Douglas at the time of his arrest, denied any acquaintance with them and said he first saw them at police headquarters, denied ever being advised of his constitutional rights and that he made any inculpatory statements to the police officers. He claimed that he was arrested while walking along the street on his way to a party he had been told was in progress at an unknown address.

Testifying as a defense witness, McHenry said that he and Douglas and a man known to him only as Al committed the robbery, that the defendant had nothing to do with it, and that he falsely implicated the defendant in his own confession. Douglas did not testify.

As the exclusive judges of the credibility of the witnesses and of the weight to be given to their testimony, the jury by its verdict rejected the defendant's and McHenry's stories. The defendant has failed to carry his burden of demonstrating here that the evidence preponderates against the verdict of the jury and in favor of his innocence.

■ The defendant next insists that the court erred in allowing the jury to view the various State exhibits

during the voir dire examination and before any of the various items were introduced in evidence. There is nothing in this record showing that any such occurred. The same contention was advanced in the motion for a new trial. However, it is fundamental that a new trial motion is only a pleading and is not evidence or proof of the truth of matters therein recited, and it affords no basis for an Assignment of Error where there is no evidence in the Bill of Exceptions to support the appellant's claim. Peek v. State, 213 Tenn. 323, 375 S.W.2d 863; Koehn et al. v. Hooper, 193 Tenn. 417, 246 S.W.2d 68. See also: Hawkins v. State, 220 Tenn. 383, 417 S.W.2d 774 and Hanvy v. State, 215 Tenn. 322, 385 S.W.2d 752. In *Peek,* supra, the Court said:

> "* * * It is true that these matters are asserted in the motion for a new trial, but this is not sufficient since such a motion is a mere pleading and is no evidence or proof of the truth of the fact asserted by it; and affords no basis for this assignment of error. Sherman v. State, 125 Tenn. 19, 51, 140 S.W. 209 (1911); Dupes v. State, 209 Tenn. 506, 513, 354 S.W.2d 453 (1961)."

■ ■ In his seventh and eighth Assignments of Error the defendant's essential complaint is that the prosecutor, Mr. Marcellini, and police officers were erroneously permitted to testify about his inculpatory statements made in their presence, the insistence being that he was not fully advised concerning his constitutional rights. As noted hereinabove, this record conclusively demonstrates that the defendant was fully advised regarding his Fifth Amendment rights three separate times, when he was arrested on Saturday night, before he was interrogated on

Sunday, and again on Monday before his custodial interrogation in the presence of Mr. and Mrs. Marcellini. This whole question was explored by the trial court as a preliminary matter apart from the jury, during which the defendant also testified, after which the court ruled, and we think properly, that the defendant's confessions were freely and voluntarily made with a full understanding of his rights. The trial court's determination with reference to compliance with the *Miranda* mandate by interrogating officers, and as to the voluntariness of statements made by the accused during custodial interrogation, is conclusive on appeal unless the appellate court finds that the evidence touching those questions preponderates against the trial judge's findings. Lloyd v. State, Tenn., 440 S.W.2d 797. Upon appeal, the defendant has the burden of showing that the evidence preponderated against such a finding by the trial judge. Wooten v. State, 203 Tenn. 473, 314 S.W.2d 1. In this case the evidence fully sustains the trial court's findings. Moreover, as we have also noted, the defendant's insistence throughout the trial was that he did not at any time make any inculpatory statements to the police officers.

The law is well settled that a juvenile defendant's confession which is voluntarily given to police authorities, after being fully warned and advised concerning his constitutional rights, is admissible at his trial. And this is true even though the confession or admission is made by the juvenile before he is taken before a juvenile court. O'Neil v. State, Tenn.Cr.App., 455 S.W.2d 597. This defendant was not a child. Although he was only 17 years of age at the time of the robbery, he was obviously mature both physically and mentally. He was in the 10th

grade at Carver High School, was large for his age and was a football player. Contrary to his insistence here, he was not detained by the Memphis Police and interrogated for several days. He was arrested late Saturday night and admitted involvement in the robbery, after being advised of his constitutional rights. Being so advised again on Sunday and on Monday, he incriminated himself by detailing his part in the crime. On Monday he was delivered to the juvenile court, which remanded him back to the criminal court on Wednesday for disposition as an adult under T.C.A. § 37-265.

■ Also baseless is the ninth Assignment of Error which is that the trial court erroneously refused, upon objection by the State, to permit the defendant to say whether he had been in the Criminal Courts of Shelby County previously. Obviously, the defendant could not have been prejudiced.

Lastly, the defendant urges upon us here that the trial court erroneously refused to permit the last two defense witnesses, William Wooduff and R. B. Thompson, to be called and testify. There is nothing in this record to show that any such occurrence transpired.

Let the judgment of the trial court be affirmed.

MITCHELL, J., concurs.

GALBREATH, Judge (dissenting).

I cannot concur in the holding of the majority to the effect that the 17 year old defendant, James Mitchell, was not a child at the time of his arrest and unlawful interrogation. I am sustained in my contention by the

statutes of this State and the rulings of the United States Supreme Court.

> T.C.A. "37-202. Definitions.—When used in this chapter unless the context otherwise requires: (1) 'Child' means any person eighteen (18) years of age or under."

It is axiomatic that this Court is bound by the decisions of the United States Supreme Court. That highest tribunal has ruled that statements elicited from a minor by police while the minor was subject to the jurisdiction of juvenile court may not be admitted against him in a criminal prosecution. As noted in footnote 2 in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84:

> "Since the statements were made while petitioner was subject to the jurisdiction of the Juvenile Court, they were inadmissible in a subsequent criminal prosecution under the rule of Harling v. United States, 111 U.S.App.D.C. 174, 295 F.2d 161 (1961)."

The rule of Harling v. United States, *supra,* regarding confessions while a child is still subject to jurisdiction of the juvenile court is summarized as:

> "* * * the juvenile proceeding must be insulated from the adult proceeding. This requires that admissions by a juvenile in connection with the non-criminal proceeding be excluded from evidence in the criminal proceeding. We hold this requirement applicable in this case and in all similar cases in the future."

*Harling* also in turn bases its rule on an earlier pronouncement from Pee v. United States, 107 U.S.App.

D.C. 47, 274 F.2d 556, which "makes plain that from the moment a child commits an offense 'in effect he is exempt from the criminal law' unless and until the Juvenile Court waives its jurisdiction."

Kent, if we use any measure except the arbitrary one of chronological age, was no child. At 14 he engaged in burglary and other crimes. At 16 he was mature enough to commit forcible rape. Yet the Supreme Court of the United States termed him a child subject to the exclusive jurisdiction of the juvenile court because the particular juvenile act involved by law defined him as such.

While philosophically I might not be wholly in accord, I feel firmly bound by the clearly applicable decision of the United States Supreme Court in *Kent* and would reverse this case for a trial excluding the illegally obtained admissions against interest.