IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1997 SESSION



FILED

**November 14, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

STATE OF TENNESSEE,            )
                              )
            APPELLEE,          )
                              )   No. 02-C-01-9611-CC-00412
                              )
                              )   Madison County
v.                            )
                              )   Whit Lafon, Judge
                              )
                              )   Second Degree Murder
CARLOS COMAN,                 )
                              )
            APPELLANT.         )


FOR THE APPELLANT:                 FOR THE APPELLEE:

Jan R. Patterson                   John Knox Walkup
Attorney at Law                    Attorney General & Reporter
225 West Baltimore, Suite B        500 Charlotte Avenue
Jackson, TN 38301                  Nashville, TN 37243-0497

                                   Kenneth W. Rucker
                                   Assistant Attorney General
                                   450 James Robertson Parkway
                                   Nashville, TN 37243-4351

                                   James G. Woodall
                                   District Attorney General
                                   P.O. Box 2825
                                   Jackson, TN 38302-2825

                                   James W. Thompson
                                   Assistant District Attorney General
                                   P.O. Box 2825
                                   Jackson, TN 38302-2825

                                   Christopher J. Schultz
                                   Assistant District Attorney General
                                   P.O. Box 2825
                                   Jackson, TN 38302-2825


OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Carlos Coman (defendant), was convicted of second degree murder, a Class A felony, by a jury of his peers. The trial court, finding the defendant to be a standard offender, imposed a Range I sentence consisting of confinement for twenty (20) years in the Department of Correction. In this court, the defendant presents five issues for review. He contends the evidence is insufficient to support his conviction. He also contends the trial court committed error of prejudicial dimensions by denying his motion to suppress the statement he gave to the police, excluding the terms of the victim's plea bargain agreement prior to his murder, failing to give an instruction on identification, and imposing an excessive sentence. After a thorough review of the record, the briefs submitted by the parties, and the law governing these issues, it is the opinion of this court that the judgment of the trial court should be affirmed.

On the evening of March 29, 1995, the defendant and three companions went to the apartment of Jacqueline Haynes. The defendant knocked on the door. When Haynes answered the door, the defendant, who appeared angry, asked her if she had seen Brent Love. She told the defendant she had not seen Love that evening. The defendant and his companions left. They then went to the apartment of Terry Kay Wallace.

Roderick Purdy, one of the defendant's companions, and a co-defendant, went to the door and knocked. When Andrew Thompson answered the door, Purdy asked if Love was there. According to a statement given to police, Love had removed the hubcaps from Purdy's automobile and Purdy wanted to know where the hubcaps were. Love exited the apartment and was shot five times. Eric Burton, who had also been inside Wallace's apartment, waited a short time, exited the apartment, and dragged Love back inside the apartment.

Two people were in the process of leaving a church directly across the street from the situs of the murder. They saw three or four people congregated in front of Wallace's apartment. One person shot the victim. They saw the victim fall. The perpetrators of the murder ran away. Neither party could identify any of the individuals they saw since it was dark. Several witnesses testified they heard five or six shots in rapid succession.

Love appeared to be in excruciating pain. He was breathing heavily. He then began to moan and gasp for breath. Later, he began "fading in and out." When Burton and Thompson would call Love's name, he would respond, but would then lapse back into an unconscious state. He died later that night at the hospital. Shortly after Love was dragged inside the apartment, he told Burton and Thompson twice that "Bushwick" shot him. The defendant's nickname is Bushwick. The victim obviously knew the defendant.

An autopsy revealed the victim died of multiple gunshot wounds. Three of the wounds discovered by the pathologist were superficial. One projectile struck the victim's spine and stopped. The remaining projectile struck the victim on the right side of the chest, bruised the right lung, passed through both chambers of the heart, and struck the aorta as well. This latter wound was the cause of the victim's death.

The defendant gave the police a statement. He admitted to the officers that he was present when the victim was shot. However, he denied he was the person who shot the victim. When the shooting began, the defendant ran and hid in a grove of trees behind a grocery store.

## I.

The defendant contends the evidence is insufficient, as a matter of law, to support his conviction. He argues his conviction is predicated upon the dying declaration of the victim, presented through the testimony of Thompson and Burton, two convicted felons. He also argues the evidence does not support a conviction based exclusively upon circumstantial evidence.

## A.

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

3

In determining the sufficiency of the convicting evidence, this court does not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

**B.**

Before an accused can be convicted of second degree murder, the State of Tennessee must prove beyond a reasonable doubt the accused knowingly killed the victim. Tenn. Code Ann. § 39-13-210(a)(1). In this case, the defendant, who appeared angry, asked Haynes if the victim was inside her apartment or whether she had seen the victim that evening. The defendant admitted he was present outside Wallace's apartment when

4

the victim was shot. He also admitted he left the situs of the crime running. The victim made a dying declaration stating the defendant was the person who shot him.

This court finds the evidence is clearly sufficient to support a finding by a rational trier of fact that the defendant was guilty of second degree murder beyond a reasonable doubt. Tenn. R. App. P. 3(e); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

This issue is without merit.


## II.


The defendant contends the trial court committed error of prejudicial dimensions by denying his motion to suppress a statement he made to a police officer. He argues he was only sixteen years of age with borderline intellectual functioning capacity at the time he made the statement. As a result, the defendant was not capable of voluntarily, knowingly, and intelligently waiving his Miranda rights.

Officer Barry Michael interviewed the defendant shortly after the murder of the victim. He read the Miranda warnings to the defendant. The defendant advised Officer Michael he understood his rights and he was willing to waive these rights. The defendant did not ask any questions about his rights.

The defendant was asked to read the first sentence on the waiver of rights form to test whether he could read. The defendant had no problem reading the sentence. Officer Michael then permitted the defendant to sign the waiver of rights form. After the interview was completed, Officer Michael read the statement to the defendant. He then gave the statement to the defendant to read and make changes or approve it. The defendant signed the statement as prepared by Officer Michael.

The defendant presented a psychologist to support his contentions. The psychologist testified the defendant possessed a borderline range of intelligence. The defendant was found to read at a fourth grade level. According to the psychologist, a person must be able to read at the sixth grade level to understand the Miranda warnings.

5

However, the psychologist opined the defendant knew right from wrong, was competent to stand trial, and was capable of assisting counsel.

The defendant testified during the suppression hearing. He acknowledged he signed the waiver of rights form, but stated he did not know why he signed the form. He also acknowledged he signed the statement attributed to him. He refuted Officer Michael's testimony. The defendant denied Michael read the Miranda warnings or the statement to him. However, the defendant stated he was able to read the statement. The defendant also stated he told the police the truth when giving the statement, and that he provided the police with the information contained in the statement.

When an accused is afforded an evidentiary hearing on the merits of his motion to suppress a statement given to a law enforcement officer, the findings of fact made by the trial court are binding upon the appellate court unless the evidence contained in the record preponderates against these findings. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994); State v. O'Guinn, 709 S.W.2d 561, 565-66 (Tenn.), cert. denied, 478 U.S. 820, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986); State v. Mosier, 888 S.W.2d 781, 785 (Tenn. Crim. App. 1994). This standard of review was created because the trial court, as the trier of fact, must assess the credibility of the witnesses, determine the weight and value to be afforded the evidence adduced during the hearing, and the court must resolve any conflicts in the evidence. However, an appellate court is not bound by the trial court's conclusions of law. The defendant has the burden of illustrating to this court that the evidence contained in the record preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App.), cert. denied (Tenn. 1975); Mitchell v. State, 3 Tenn. Crim. App. 494, 501, 464 S.W.2d 307, 311, cert. denied (Tenn. 1971).

The waiver of the constitutional rights guaranteed by Miranda must be voluntarily, knowingly, and intelligently made to be valid. State v. Van Tran, 864 S.W.2d 465, 472 (Tenn. 1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1577, 128 L.Ed.2d 220 (1994); State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992); State v. Benton, 759 S.W.2d 427, 431 (Tenn. Crim. App. 1988). A juvenile can waive these constitutional rights if he is fully advised of the Miranda warnings and his decision to waive these rights is voluntarily,

6

knowingly, and intelligently made. State v. Gordon, 642 S.W.2d 742, 745 (Tenn. Crim. App.), per. app. denied (Tenn. 1982); Braziel, 529 S.W.2d at 506; Mitchell, 3 Tenn. Crim. App. at 501, 464 S.W.2d at 311; Vaughn v. State, 3 Tenn. Crim. App. 54, 62, 456 S.W.2d 879, 883, cert. denied (Tenn. 1970). Similarly, a person with a mental deficiency may also waive these rights under the same circumstances. State v. Green, 613 S.W.2d 229 (Tenn. Crim. App. 1980), per. app. denied (Tenn. 1981); Braziel, 529 S.W.2d at 506. See also State v. Bell, 690 S.W.2d 879 (Tenn. Crim. App.), per. app. denied (Tenn. 1985) (adult defendant claimed to be intoxicated and suffering from a mental deficiency).

When determining whether an accused has voluntarily, knowingly, and intelligently waived his Miranda rights, this court must consider the totality of the circumstances which existed when the accused waived these rights. Middlebrooks, 840 S.W.2d at 326; Benton, 759 S.W.2d at 431; Vaughn, 3 Tenn. Crim. App. at 60-61, 456 S.W.2d at 883. Since the defendant contends his waiver of the Miranda rights was not voluntarily or understandingly entered due to his age and borderline range of intelligence, this court must consider such factors as the defendant's age, educational background, mental competence and ability, and the facts surrounding the waiver of these rights. Benton, 759 S.W.2d at 432; State v. Bell, 690 S.W.2d 879, 882 (Tenn. Crim. App.), per. app. denied (Tenn. 1985). However, one of these factors, standing alone, will not necessarily render a waiver of the Miranda rights invalid. Bell, 690 S.W.2d at 882.

In this case, the officers read the Miranda warnings to the defendant. He was asked if he understood the rights. He told the officers he understood these rights, and he did not ask any questions. The officers had the defendant read the first line of the waiver form to see if he could read. He had no problem reading the sentence. He then executed the waiver form. The officers stated the defendant appeared normal. The officers read both the waiver form and the statement to the defendant before he affixed his signature to them.

The defendant admitted his signature appeared on the waiver form. He stated he did not know why he signed the form. He also acknowledged his signature appeared on the statement he gave the police. The defendant admitted he told the officers the information contained in the statement and the content of the statement was true. He testified he was able to read the statement.

This court has considered the totality of the circumstances. The court is of the opinion the evidence contained in the record does not preponderate against the findings of fact made by the trial court. It is obvious the trial court accredited the testimony of the state's witness.

This issue is without merit.

## III.

The victim had entered a plea of guilty to aggravated robbery pursuant to a plea agreement. The defendant contends the trial court committed error of prejudicial dimensions by ruling the terms of the plea agreement could not be admitted into evidence. The defendant argues it was admissible to rebut the state's theory on motive.

This issue has been waived. The defendant has failed to state authority in support of this issue. Tenn. R. App. P. 27(a)(7). Also, the document containing the plea agreement was not made an exhibit, and, therefore, has not been included in the record transmitted to this court. As a result, this court cannot consider the issue. State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993). Instead, this court must presume the ruling of the trial court was correct. State v. Locust, 914 S.W.2d 554, 557 (Tenn. Crim. App.), per. app. denied (Tenn. 1995).

This issue is without merit.

## IV.

When the trial court completed reading the charge to the jury, the court asked counsel if there were any other matters counsel wanted to submit. Defense counsel advised the court she did not remember hearing an instruction on identification. Counsel submitted a special request which set forth the identification instruction recommended by the supreme court in State v. Dyle, 899 S.W.2d 607 (Tenn. 1995). The trial court refused to give the special request. The defendant contends the trial court committed error of prejudicial dimensions by failing to instruct the jury on the law of identification. The state

8

contends the defendant did not place his identification in issue.

In this case, the evidence identifying the defendant as the person who killed the victim is unique. The defendant and Roderick Purdy, a co-defendant, searched for the victim. They went to the Haynes residence and asked Haynes if the victim was inside or if she had seen the victim that evening. According to Haynes, the defendant appeared angry. The defendant and Purdy then went to the Wallace residence where the victim was visiting. Purdy went to the door and asked for the victim. It appears Purdy saw the victim and another person steal his hubcaps, and Purdy wanted to address the matter with the victim. The victim went outside. Shots were fired at the victim. Purdy, the defendant, and their friends ran away. A person inside the residence went outside and brought the victim into the residence. The victim told those inside the apartment "Bushwick" was the person who shot him; Bushwick is the defendant's nickname. The defendant gave the police officers a statement admitting, like the co-defendant, that he was present when the victim was murdered, but denying that he fired the shots that killed the victim.

The defendant predicates the necessity for an instruction on identification based upon the testimony of an independent witness, Sandra Luanne Cisco Holt. She was across the street from where the murder occurred. It was dark and she could not identify any person who was present when the shots were fired. Holt saw the fire come from the barrel of the pistol; it was the only weapon she saw fired.

During cross-examination the witness was asked about the identification she gave the police officers when she was interviewed. Her answer was: "I just said he was I think average height, medium build, pretty much." When asked what the average height of a man was, she stated: "I guess somewhere around 5' 7" or six foot. "When asked about the height of the person who fired gun, she responded: "I really don't [know]. I couldn't tell how tall he was. That's why I just said he was average, you know. Nothing stood out to me to make -- you know -- so I just said he was average." She saw the defendant at a prior court hearing and she viewed the defendant during the trial. The witness said on both occasions the defendant was shorter than the height of the average man she had previously described.

The basis of the identification in this case was the dying declaration made by the

9

victim. Of course, the testimony by Haynes placed Purdy and the defendant together shortly before the shots were fired. Both admitted to being present when the shots were fired. Holt could not identify the person who shot the victim. Moreover, she gave a generic description of the person who fired the weapon. Nevertheless, the defendant argues for an identification instruction based on Holt's testimony on cross-examination.

The trial court instructed the jury as follows: "The Court further charges you that the mere presence of a person in an area where a crime was committed is not sufficient for a finding of guilt of such crime by that person." In this case, this instruction was sufficient based on the evidence. Nevertheless, the trial court should have included the identification instruction in its charge to the jury. However, the failure to do so constituted harmless error in the context of this case. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

This issue is without merit.

**V.**

The defendant contends the sentence imposed by the trial court is excessive. He argues the trial court found one enhancement factor and one mitigating factor. Therefore, the court should have sentenced the defendant to the presumptive minimum sentence of fifteen years. The defendant also contends the trial court did not consider the principles of sentencing and all of the factual circumstances. Thus, this court should grant him a new sentencing hearing.

When an accused challenges the length of the sentence imposed by the trial court, it is the duty of this court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this case, the trial court did not comply with the Ashby requirement. When sentencing the defendant, the trial court simply said: "It's the judgment of the Court that you'll be sentenced to the penitentiary for a period of 20 years. You're now sentenced." Therefore, the presumption does not apply, and this court will conduct a de novo review without a presumption that the

findings of the trial court are correct.

There are four enhancement factors supported by the record.

The defendant has an extensive history of criminal behavior and convictions. Tenn. Code Ann. § 40-35-114(1). The juvenile record of an accused can be considered when determining whether the state has established this enhancement factor. State v. Adams, 864 S.W.2d 31, 34 (Tenn. 1993), rev'd on other grounds, 864 S.W.2d 31 (Tenn. 1993); State v. Crowe, 914 S.W.2d 933, 939 (Tenn. Crim. App. 1995), per. app. denied, (Tenn. 1996); State v. Stockton, 733 S.W.2d 111, 112-13 (Tenn. Crim. App. 1986), per. app. denied (Tenn. 1987). The presentence report lists numerous juvenile convictions. The defendant has been convicted of an attempt to commit voluntary manslaughter, carrying a weapon on school grounds, simple assault, criminal trespass, vandalism, evading arrest, and other minor offenses. He admitted to the presentence officer he smoked marijuana and drank alcohol daily. See State v. Keel, 882 S.W.2d 410, 419 (Tenn. Crim. App.), per. app. denied, (Tenn. 1994).

The defendant was a leader in the commission of the offense. Tenn. Code Ann. § 40-35-114(2). It was the defendant who asked if the victim was at the Haynes residence or whether Haynes had seen the victim on the night in question. The defendant was also the person who armed himself.

A pistol was used to commit the offense. Tenn. Code Ann. § 40-35-114(9). The use of the weapon is not an element of second degree murder. This court has held this enhancement factor may be applied when the accused is convicted of murder in the second degree. See State v. Butler, 900 S.W.2d 305, 312-13 (Tenn. Crim. App. 1994); State v. Raines, 882 S.W.2d 376, 385 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992), per. app. denied (Tenn. 1993).

The defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(10). When the shots were fired there were numerous people near the situs of the shooting. There were people inside the residence. There were people across the street leaving a church service. Also, the defendant's friends were very close when the shooting occurred. See State v. Ruane, 912 S.W.2d 766,

11

784 (Tenn. Crim. App. 1995); State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App.), per. app. denied (Tenn. 1995); State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App.), per. app. denied (Tenn. 1994).

The mental capacity of the defendant is the only mitigating factor supported by the record. Tenn. Code Ann. § 40-35-113(8).

The weight to be given enhancement and mitigating factors rests within the sound discretion of the trial court. Shelton, 854 S.W.2d at 123. In this case, the enhancement factors are to be given great weight. The defendant's prior conviction for crimes of violence, including an attempt to commit voluntary manslaughter, assault, and weapons offenses, require this court to give enhancement factor (1) great weight. The remaining enhancement factors are also to be given serious consideration. The mitigating factor is entitled to little weight as it did not enter into the equation in the murder of the victim. The sentence of twenty (20) years is reasonable considering the defendant is a violent person, the public deserves protection from this criminal activity, and the length of the sentence conforms to the nature of the offense.


_____
JOE B. JONES, PRESIDING JUDGE


CONCUR:



_____
GARY R. WADE, JUDGE



_____
CURWOOD WITT, JUDGE