IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 13, 2017

**STATE OF TENNESSEE v. SCOTTIE LEE MOFIELD**

**Appeal from the Criminal Court for Davidson County**
**No. 2015-C-2248    Steve R. Dozier, Judge**

_____

**No.  M2016-02364-CCA-R3-CD**
_____

The Defendant, Scottie Lee Mofield, was found guilty by a Davidson County Criminal Court jury of aggravated assault, a Class C felony. *See* T.C.A. § 39-13-102 (2014) (amended 2015, 2016, 2017).  The trial court sentenced the Defendant as a Range II, multiple offender to eight years' confinement and ordered his sentence to be served consecutively to a sentence in an unrelated case.  On appeal, the Defendant contends that the trial court erred (1) during sentencing and (2) by denying his motion for a new trial on the basis of newly discovered evidence.  We affirm the judgment of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT L. HOLLOWAY, JR., JJ., joined.

Frank E. Mondelli, Jr., Nashville, Tennessee, for the appellant, Scottie Lee Mofield.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Ann Thompson, Senior Counsel; Glenn Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to a June 2015 physical altercation involving Robert Vaughn, Maria Flowers, Ricky Palmer, and the Defendant.  The Defendant and Ms. Flowers were involved in a romantic relationship at the time of the incident, and Mr. Palmer and Ms. Flowers were siblings.  The Defendant, Ms. Flowers, and Mr. Palmer were indicted for the aggravated assault of Mr. Vaughn and were convicted at a joint trial.

At the trial, Robert Vaughn testified that in June 2015, he was homeless, lived at a "camp" near an apartment complex, and earned a small income selling *The Faith Unity*

newspaper. He said he was age sixty, was 6'1" tall, and weighed between 165 and 180 pounds. He said that on June 5, at 10:00 p.m., he left his camp to walk to a nearby convenience store to purchase a drink and cigarettes. He said that he purchased the items, left the store, placed his drink on the sidewalk, and opened his pack of cigarettes. He said that he was approached by codefendant Flowers outside the store, that codefendant Flowers wanted to know if he could spare a cigarette and a portion of his drink, and that he declined to share. He said that codefendant Flowers pushed him, that she picked up, threw, and broke his drink on the ground, and that he was attacked from the back and side by the Defendant and codefendant Palmer. Mr. Vaughn noted that the three were standing outside the store when he arrived. He said that did not know the Defendant and codefendant Flowers personally but that he had spoken to codefendant Palmer previously.

Mr. Vaughn testified that "they got [him] on the ground," that the Defendant and his codefendants kicked and punched him with fists repeatedly, and that he attempted to cover his body during the attack. He said that they kicked his face, skull, chest, back, abdomen, and legs, that he attempted to stand twice during the incident, and that he fell on the ground. He said that the Defendant and his codefendants abruptly stopped attacking him and left the area. He said that he attempted to compose himself and return to his camp quickly because he feared for his life. He said that his eye was swollen closed before he left the parking lot. He said that although he had a pocket knife, he never removed it from his pants pocket.

Mr. Vaughn testified that Dane McPeak lived at the camp with him, that Mr. McPeak attempted to treat his wounds, and that the bleeding continued. Mr. Vaughn said that Mr. McPeak talked to him all night to ensure he did not have a concussion and that he was in pain all night. He said that the next morning, Mr. McPeak spoke with Pauline Spalding, the manager of the nearby apartment complex, and that she called the police. He said that he feared what would happen if he told the police about the incident and that as a result, he initially refused to go to the hospital and to identify the Defendant and the codefendants.

Mr. Vaughn testified that after the police and the paramedics left, Ms. Spalding convinced him to go to the emergency room and that an ambulance took him to the hospital. He learned at the hospital that he had skull fractures, a broken nose, four jaw fractures, a "shattered" eye socket, and a dislodged optic nerve. He suffered permanent blindness in his right eye, and he reported having no sight issues before the incident. He said that he had difficulty concentrating, that his depth perception was impaired, and that he fell frequently. He said that he had jaw surgery and that his other injuries healed without surgery. He said that he told Ms. Spalding who had attacked him, that he later spoke to the police about the incident, and that he identified the Defendant and the codefendants from photograph lineups. He said that during the incident, the Defendant kicked and "stomped" him and struck him with a fist.

On cross-examination, Mr. Vaughn testified that the Defendant and codefendant Palmer never spoke during the incident and that Mr. Vaughn and the Defendant had no personal issues before the incident. Mr. Vaughn said that codefendant Flowers only stated that nobody was going to have the drink before she threw it on the ground. Mr. Vaughn did not know why the Defendant and his codefendants attacked him and denied grabbing codefendant Flowers's neck after she threw his drink. He said he did not have time to become upset about his drink because the Defendant and codefendant Palmer began assaulting him immediately. Mr. Vaughn agreed that his wallet, pocket knife, and cigarettes were not taken during the incident and said that he did not see anyone in the parking lot after the incident.

Mr. Vaughn testified that his initial medical treatment was limited to the emergency room and that he was not admitted to the hospital. He agreed he was provided with medication by the emergency room physicians but said he did not receive prescriptions to obtain at a pharmacy. He said that his ribs were bruised during the incident, that the defense should have photographs of the bruises, and that boot prints were visible in the bruises. He said that he walked to the bus stop after his release from the hospital. He said that his upper denture plate was broken during the incident. He agreed he had a history of seizures before the incident but denied any of his injuries were the result of a seizure or had been sustained during a previous seizure.

Mr. Vaughn testified that he drank one forty-ounce bottle of beer after working on the day of the incident and that he purchased another bottle before the incident. He said the Defendant and codefendant Palmer stood about two feet from him and codefendant Flowers. Mr. Vaughn did not know if the Defendant or codefendant Palmer struck him first. Mr. Vaughn said that although he saw the Defendant and codefendant Palmer striking and kicking him, he thought codefendant Flowers "moved to the side." He thought the Defendant wore boots and codefendant Palmer wore tennis shoes.

Dane McPeak testified that he and Mr. Vaughn were friends and lived at the same homeless shelter and camp at the time of the incident. Mr. McPeak said that when Mr. Vaughn returned to the shelter after going to the convenience store, Mr. Vaughn had been severely beaten. Mr. McPeak said that Mr. Vaughn bled profusely from his nose, mouth, eye, and ears and that Mr. McPeak treated the wounds to attempt to stop the bleeding. He said that the next morning, he told Ms. Spalding what occurred and noted that Mr. Vaughn's swelling and coloration were worse than the previous night and that the wounds still bled.

Metropolitan Nashville Police Detective Lukas Cantrell testified that he spoke with Mr. Vaughn a couple of days after the incident and that Mr. Vaughn had significant physical injuries to the face and torso, extensive swelling, and bruises. Detective Cantrell said Mr. Vaughn identified his attackers. On cross-examination, Detective Cantrell said that he did

not go to the convenience store to investigate the incident. He said that he first spoke to Ms. Spalding, who had spoken with the detective's supervisor. On redirect examination, he stated that Mr. Vaughn identified codefendant Palmer as Ricky Palmer, the Defendant as "Scottie," and codefendant Flowers as "Piggy." Detective Cantrell said that Mr. Vaughn also provided physical descriptions of each person involved and that Mr. Vaughn explained that he did not initially identify the Defendant and the codefendants because he feared retaliation.

Pauline Spalding, a former Wilson County community corrections officer, testified that she had worked at the apartment complex near the homeless camp for six years. She said she managed and oversaw security at the apartment complex. She said that the apartment units were rented by convicted felons and former homeless persons, that the complex had strict rules, and that probation officers frequented the complex. She said that Mr. Vaughn and Mr. McPeak lived at the complex previously but did not live there at the time of the incident.

Ms. Spalding testified that on June 6, 2015, Mr. McPeak told her that Mr. Vaughn had been injured, needed medical care, and had refused to go to the hospital. She called the police and gave Mr. McPeak $10 cash to purchase bandages for the wounds. She said that the police arrived, that she assisted the officers in finding Mr. Vaughn, and that Mr. Vaughn's condition was "horrible." She said that Mr. Vaughn's jaw and right eye were "dislocated," that he bled profusely from his right eye, and that she saw bruises. She said that Mr. Vaughn refused medical treatment and that she became upset because she thought he was going to die as a result of the blood loss. She said she convinced Mr. Vaughn to obtain medical treatment later that afternoon. She said that after Mr. Vaughn's discharge from the hospital, Mr. Vaughn and Mr. McPeak began living at the apartment complex.

On cross-examination, Ms. Spalding testified that Mr. Vaughn was involved in a domestic assault with a female roommate when he previously lived at the apartment complex. She said that at some point when Mr. Vaughn lived at the complex, he and Mr. McPeak were involved in a disagreement but that no criminal charges were filed. She said that codefendant Palmer and his family had lived at the camp and that "they" had been involved in many altercations at the camp.

Metropolitan Nashville Police Officer David Studer testified that he spoke to Mr. Vaughn after Mr. Vaughn was discharged from the hospital. Officer Studer showed Mr. Vaughn three photograph lineups, and Mr. Vaugh identified the Defendant and the codefendants. Officer Studer said that he spoke to a convenience store clerk about whether the store maintained surveillance recordings and that the clerk reported the store did not have cameras outside the building. Officer Studer said the cameras inside the store did not work at the time of the incident. On cross-examination, Officer Studer stated that he spoke to Mr.

-4-

Vaughn approximately six weeks after the incident because Mr. Vaughn was in and out of the hospital for about six or seven weeks.

Codefendant Flowers testified that she lived at the homeless camp at the time of the incident. She said that she lived there with the Defendant, who was her boyfriend, and codefendant Palmer, who was her brother. She said that at the time of the incident, she, the Defendant, and codefendant Palmer stood outside the convenience store drinking a beer, that Mr. Vaughn left the store and walked toward them, and that Mr. Vaughn and codefendant Palmer had a casual conversation. She said that Mr. Vaughn became irritated that they had not left the parking lot because Mr. Vaughn was waiting on the "dope dealer" to arrive and feared the dealer would not "serve" him because they were still there. She said that when they did not leave, Mr. Vaughn cursed her and called her derogatory names, that Mr. Vaughn scared her, and that she thought Mr. Vaughn was going to hit her with the beer bottle he carried. She said that she pushed the bottle out of his hands, that it fell and broke, and that Mr. Vaughn became angry. She said that Mr. Vaughn grabbed her and called her a "f------ b----," that the Defendant and codefendant Palmer intervened to get Mr. Vaughn away from her, and that she thought the incident had ended. She said that she, the Defendant, and codefendant Palmer stayed in the parking lot for a few minutes and left.

Codefendant Flowers testified that she did not know Mr. Vaughn personally but had seen him in the neighborhood and knew he was homeless. She said that after June 5, she saw Mr. Vaughn at a church that served Thursday night dinner to the homeless.

On cross-examination, codefendant Flowers testified that although she knew Mr. Vaughn carried a knife, she did not see the knife on the night of the incident. She agreed her nickname was Piggy. She said that Mr. Vaughn became upset about fifteen minutes after he began talking to codefendant Palmer. She said Mr. Vaughn grabbed her with both of his hands around her waist after she knocked the beer bottle from Mr. Vaughn's hands. She said that nobody assaulted Mr. Vaughn, although he was lying on the ground after the Defendant and codefendant Palmer intervened. She did not recall if Mr. Vaughn was bleeding profusely when they left the parking lot but said she saw blood on the concrete near Mr. Vaughn. She said that although the Defendant and codefendant Palmer "got [Mr. Vaughn] off of her," she did not know who "grabbed" Mr. Vaughn. She denied the Defendant wore boots that night and said she thought he wore black tennis shoes. She did not recall whether the Defendant wore boots at the time of his arrest. She agreed she, the Defendant, and codefendant Palmer were not injured during the incident but said she feared for her life.

Codefendant Flowers testified that Mr. Vaughn had a bruised eye when she saw him in June after the incident. She did not think the injury was severe. She said that she was 5'7" tall and weighed 250 pounds at the time of her arrest, that codefendant Palmer was the same height and weighed about 190 to 200 pounds, and that the Defendant was slightly taller. She

did not "know the beef" between the Defendant and Mr. Vaughn. She said that she had her own cigarettes and did not ask Mr. Vaughn for any of his beer.

Upon this evidence, the Defendant and codefendant Palmer were convicted of aggravated assault. Codefendant Flowers was convicted of reckless aggravated assault. This appeal followed.

## I.    Sentencing

The Defendant contends that the trial court erred during sentencing because the court failed to apply two mitigating factors and improperly applied one enhancement factor related to the Defendant's role in the offense. The State responds that the trial court properly sentenced the Defendant. We agree with the State.

At the sentencing hearing, the presentence report was received as an exhibit. However, the report is not included in the appellate record. We will not speculate as to its contents.

Codefendant Flowers testified, in relevant part, that she did not strike Mr. Vaughn or witness the Defendant's and codefendant Palmer's beating Mr. Vaughn.

The Defendant testified that he was responsible for Mr. Vaughn's injuries, along with the codefendants. The Defendant stated that he dropped out of school in the seventh grade because he had an altercation with another student, who cursed the Defendant's mother. He said that the school expelled him, that he never returned, and that he began using drugs and alcohol daily. He said that he continued abusing alcohol and using drugs throughout his life, except for periods of incarceration. He said that he had participated in various programs during his current incarceration, which focused on sobriety, life after confinement, and the victim of his conduct.

The Defendant testified that he had obtained employment should he be released and that he had been accepted into a halfway house. He said that he had never received substance abuse treatment, although he had been on probation previously. He agreed he was serving a sentence on probation at the time of the offense in this case. He said that he would not "take the law" into his hands again and that he would call the police in the future should the need arise. He said that he wanted to tell Mr. Vaughn that he was "truly . . . sorry" for what occurred that night and that he wished the incident had never happened.

On cross-examination, the Defendant testified that he struck Mr. Vaughn to "get [Mr. Vaughn] off of [his] girlfriend." The Defendant admitted striking Mr. Vaughn's upper body and said that the incident occurred quickly and that everyone was intoxicated. The

Defendant said his primary concern was codefendant Flowers. He said that he did not know where he struck Mr. Vaughn, that he swung one time, that Mr. Vaughn released codefendant Flowers and fell over a concrete slab, that the Defendant grabbed his belongings, and that "they" left the area. The Defendant did not recall anyone kicking Mr. Vaughn and denied he and codefendant Flowers kicked Mr. Vaughn. The Defendant said that codefendant Palmer was not present when the Defendant struck Mr. Vaughn but that codefendant Palmer struck Mr. Vaughn when codefendant Palmer walked from around the building because Mr. Vaughn stood and chased after the Defendant and codefendant Flowers. The Defendant stated, though, he did not see Mr. Vaughn chase him and codefendant Flowers.

The Defendant testified that at the time of the present offense, he was on probation for aggravated assault. He said that he and codefendant Flowers were initially charged with aggravated robbery, that he pleaded guilty to aggravated assault, and that codefendant Flowers inflicted serious injuries on the victim. He agreed that he violated his probation by failing to report to his probation officer in April 2015 but said that he did not return to prison. He said that he was returned to probation about one month before the incident in the present case.

The Defendant testified that he had an extensive criminal history dating to 2007, that he was adjudicated to have committed delinquent acts as a juvenile, and that his juvenile matters related to possession with the intent to sell marijuana and Xanax. He agreed he had previous convictions for felony theft and admitted his guilt. He agreed he had a previous conviction for domestic assault but denied assaulting the victim and alleged the victim's arm injury was caused by the victim's drug use. He said he pleaded guilty only to obtain release from confinement. He agreed he was previously convicted of a second count of domestic assault, which involved codefendant Flowers, but denied striking her. He agreed the incident began with a disagreement between him and codefendant Flowers's father but said that codefendant Flowers began fighting the Defendant when he attempted to leave. The Defendant said that he "took issue" with the drugs codefendant Flowers used at this time and that sending him to jail allowed her to use whatever drugs she wanted. He said he pleaded guilty to domestic assault to obtain release from jail.

Codefendant Palmer testified, in relevant part, that he participated in the attack and that he wished he could "take it back." He said that he was under the influence of cocaine and alcohol at the time of the incident.

On cross-examination, codefendant Palmer testified that initially, he was behind the building, that he heard an altercation, that he walked to the front of the building, that he saw the Defendant and codefendant Flowers leaving, and that Mr. Vaughn was "already up off . . . the ground." Codefendant Palmer said that although he knew at the time of sentencing that Mr. Vaughn had been on the ground, he did not know it at the time of the incident.

Codefendant Palmer said that Mr. Vaughn turned around and yelled at him, which resulted in a "fistfight." Codefendant Palmer agreed he saw blood on Mr. Vaughn's face before the fistfight. Codefendant Palmer agreed that codefendant Flowers and Mr. Vaughn were incorrect about the incident. After codefendant Palmer denied making the statement that he "finished" the incident and almost beat Mr. Vaughn to death, the State played the recording of a jail telephone call between codefendant Palmer and a woman identified as Wanda.

In the recording, Wanda stated that she thought codefendant Palmer would receive probation at his sentencing hearing, but codefendant Palmer doubted he would receive probation. He discussed the felony classification of his and the Defendant's convictions and noted codefendant Flowers's conviction was a lower felony classification. Wanda stated that codefendant Flowers started the incident by "running her mouth" but that codefendant Palmer "finished it." He admitted, because the trial had concluded, that he was the person who "beat him about half to death." He said codefendant Flowers and the Defendant "never even hit the mother------."

In the recording, codefendant Palmer and Wanda discussed accepting a plea agreement. He stated that the Defendant would not accept a six-year sentence, which prevented a plea agreement for codefendant Palmer. Codefendant Palmer said that if "we" received a sentence to serve, he was going to beat the Defendant "about half to death," breaking the Defendant's facial bones, before the police could intervene at the courthouse.

The trial court relied upon the trial and sentencing hearing testimony, the presentence report, and the arguments of counsel. The court determined that the Defendant was a Range II offender with a sentence range of six to ten years and that no mitigating factors applied. *See* T.C.A. § 40-35-113 (2014).

Relative to enhancement factors, the trial court found that factors (1), (2), (6), and (13) applied. *See id.* § 40-35-114(1), (2), (6), (13) (2014) (amended 2015, 2016, 2017). The court found that the Defendant had two previous felony and ten previous misdemeanor convictions and noted that several convictions involved assaultive behavior. *See id.* § 40-35-114(1) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]"). The court found that, based upon the Defendant's sentencing hearing testimony and Mr. Vaughn's trial testimony, the Defendant was a leader in the offense. The court found that based upon the trial testimony and the recorded jail call, codefendant Palmer was also a leader in the commission of the offense. *See id.* § 40-35-114(2) ("The defendant was a leader in the commission of an offense involving two (2) or more criminal actors[.]"). The court found that even if it accepted as true codefendant Palmer's statements during the jail call, codefendant Palmer's statements were inconsistent with Mr. Vaughn's trial testimony. The court found that codefendant Palmer merely finished what the Defendant and codefendant Flowers started.

The court found that the injuries inflicted upon Mr. Vaughn were particularly great based upon the fractured jaw and the loss of sight. *See id.* § 40-35-114(6) ("The personal injuries inflicted upon . . . the victim [were] particularly great[.]"). The court found that factor (13) applied because the Defendant was serving a sentence on probation at the time of the offense. *See id.* § 40-35-114(13) ("At the time the felony was committed, . . . the defendant . . . [was] [r]eleased on probation[.]"). The court also noted that the Defendant had two previous probation violations and that the Defendant had not turned his life around.

The trial court determined that confinement was necessary to avoid depreciating the seriousness of the offense and because of the Defendant's extensive history of criminal conduct. The court found that the incident was about the Defendant's and codefendant Palmer's beating and kicking Mr. Vaughn repeatedly and that no excuses existed to justify the Defendant's treatment of Mr. Vaughn. The trial court imposed an eight-year sentence and ordered the sentence to be served consecutively to the sentence he was serving on probation at the time of the offense in this case.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors is reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

The record reflects that the trial court applied the principles and purposes of sentencing in imposing a within-range eight-year sentence. The record reflects that the court

considered the trial and sentencing hearing testimony, the presentence report, the arguments of counsel, the nature of the criminal conduct, and the mitigating and enhancement factors.

The Defendant argues that the trial court erred by applying enhancement factor (2), that the Defendant was a leader in the offense involving two or more criminal actors. The record reflects that the Defendant admitted responsibility for Mr. Vaughn's injuries and stated that he first struck Mr. Vaughn before anyone else. The Defendant said that Mr. Vaughn fell onto a concrete slab after the Defendant struck Mr. Vaughn. Mr. Vaughn testified at the trial that the Defendant and codefendant Palmer attacked Mr. Vaughn from the back and the side and that Mr. Vaughn fell on the ground. Mr. Vaughn stated that the Defendant and the codefendants kicked and punched him with their fists repeatedly, stomped him repeatedly, and kicked his face, head, chest, back, abdomen, and legs.

Although the recorded jail call reflects that codefendant Palmer took responsibility for Mr. Vaughn's injuries, codefendant Palmer's statements during the jail call contradicted Mr. Vaughn's trial testimony. Codefendant Palmer's statements, likewise, contradict the Defendant's sentencing hearing testimony in which the Defendant admitted responsibility for Mr. Vaughn's injuries. This court has concluded that enhancement factor (2) "does not require the defendant be the sole leader but rather he be 'a leader,' and as a result both of two criminal actors may qualify for enhancement under this factor." *State v. Freeman*, 943 S.W.2d 25, 30 (Tenn. Crim. App. 1996); *see State v. Hicks*, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993). The record supports the trial court's application of factor (2).

Relative to mitigating factors, the Defendant argues that the trial court should have applied factors (1) and (4). *See* T.C.A. § 40-35-113(1) ("The defendant's criminal conduct neither caused nor threatened serious bodily injury[.]"), -113(4) ("The defendant played a minor role in the commission of the offense[.]"). He argues that factor (1) applied because the Defendant only struck Mr. Vaughn once and that no evidence showed his single strike caused Mr. Vaughn's serious bodily injuries. The Defendant argues that factor (4) applied because he played a minor role in the offense. He argues that codefendant Flowers's trial testimony showed that she initiated the incident, that the recorded jail call showed that codefendant Palmer was primarily responsible for the offense, and that the Defendant only struck Mr. Vaughn once in order to free codefendant Flowers from Mr. Vaughn. The record supports the trial court's application of both enhancement factors. Although the Defendant argues that codefendant Palmer's statements in the recorded jail call reflect the Defendant had a minimal role in the incident and that codefendant Flowers's testimony showed the Defendant played a minor role in the offense, the court properly found that Mr. Vaughn's trial testimony reflects otherwise. Mr. Vaughn's testimony showed that the Defendant fully participated in the incident with codefendant Palmer by kicking and hitting Mr. Vaughn and that Mr. Vaughn suffered serious injuries, which included permanent blindness in his right eye. The Defendant is not entitled to relief on this basis.

-10-

## II. Newly Discovered Evidence

The Defendant contends that he is entitled to a new trial because newly discovered evidence exonerated him of criminal wrongdoing. He argues that the trial court erred by denying his motion for a new trial because the recorded jail call presented at the sentencing hearing showed that codefendant Palmer admitted hitting Mr. Vaughn and stated the Defendant and codefendant Flowers "never touched" Mr. Vaughn. The State responds that the court properly denied the motion for a new trial. We agree with the State.

In response to the recorded jail call, trial counsel argued at the sentencing hearing that the Defendant's "role in all this was minor" and that the Defendant did not hurt Mr. Vaughn. Counsel requested that the Defendant receive probation and that the sentence be served concurrently with a sentence for which he was serving probation at the time of the offense. The trial judge stated that even if he accepted as true codefendant Palmer's statements in the recording, they were inconsistent with Mr. Vaughn's trial testimony. Counsel did not argue that the recording exonerated the Defendant.

At the motion for a new trial hearing, trial counsel argued that the recorded jail call showed the Defendant had a minimal role in the offense. Counsel argued the telephone call was new exculpatory evidence and a basis for severing the Defendant's case from codefendant Palmer's case. Counsel argued that justice required a new trial. The trial court stated that "circumstantial issues" existed during the trial relative to whether the Defendant was involved in the incident. The court determined the trial evidence showed that two men were responsible for Mr. Vaughn's injuries, that the jury heard the evidence relative to the extent of the Defendant's involvement, and that the jury weighed the evidence appropriately. The trial court denied the motion for a new trial on this basis.

When a defendant seeks relief in a motion for a new trial based upon newly discovered evidence, the defendant must show that he exercised "reasonable diligence in seeking the newly discovered evidence," that the evidence is material, and "that the evidence will likely change the result of the trial." *State v. Nichols*, 877 S.W.2d 722, 737 (Tenn. 1994); *see State v. Goswick*, 656 S.W.2d 355, 358-60 (Tenn. 1983). Generally, evidence that only "contradicts or attempts to impeach" witness testimony is insufficient to entitle a defendant to a new trial. *State v. Sheffield*, 676 S.W.2d 542, 554 (Tenn. 1984). Nevertheless, a trial court may grant a request for a new trial "if the impeaching evidence is so crucial to the defendant's guilt or innocence that its admission will probably result in an acquittal." *State v. Singleton*, 853 S.W.2d 490, 496 (Tenn. 1993). The decision to grant or to deny a motion for a new trial on the basis of newly discovered evidence is "within the sound discretion of the trial court." *State v. Caldwell*, 977 S.W.2d 110, 117 (Tenn. Crim. App. 1997) (citing *Hawkins v. State*, 417 S.W.2d 774, 778 (Tenn. 1967)).

The record reflects that although codefendant Palmer took responsibility in the jail call for Mr. Vaughn's injuries, the Defendant testified at the sentencing hearing that he struck Mr. Vaughn and that codefendant Palmer was not present when the Defendant struck Mr. Vaughn. The Defendant did not contend at any time that he was innocent of any wrongdoing. Mr. Vaughn's trial testimony reflects that the Defendant and codefendant Palmer were equal participants in the assault, causing Mr. Vaughn's extensive injuries. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see Sheffield*, 676 S.W.2d at 547. The jury determined the credibility of the witnesses and the weight to be given to the testimony. Likewise, evidence that only "contradicts or attempts to impeach" witness testimony is insufficient to entitle a defendant to a new trial. *Sheffield*, 676 S.W.2d at 554. The record supports the trial court's conclusion that the recorded jail call likely would not have resulted in the Defendant's acquittal. The court did not abuse its discretion by denying the motion for a new trial on this basis, and the Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE