IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 1, 2024 Session

**JASON L. WHITE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 17-01568      James Jones, Jr., Judge**

_____

**No. W2023-01177-CCA-R3-ECN**

_____

Petitioner, Jason L. White, appeals the Shelby County Criminal Court's denial of his "Petition for Writ of Error Coram Nobis." Following our review of the entire record, the briefs and oral arguments of the parties, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and JOHN W. CAMPBELL, SR., JJ., joined.

Terrell L. Tooten, Memphis, Tennessee, for the appellant, Jason L. White.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Steve Mulroy, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

Petitioner was convicted of one count of conspiracy to possess methamphetamine with the intent to sell within a drug-free zone and one count of conspiracy to possess methamphetamine with the intent to deliver within a drug-free zone. The trial court merged the two counts and sentenced Petitioner as a career offender to sixty years to be served in the Tennessee Department of Correction. *State v. White*, No. W2018-00329-CCA-R3-CD, 2019 WL 549652, at *1 (Tenn. Crim. App. Feb. 11, 2019). On direct appeal, this court affirmed Petitioner's convictions. *Id.* at *1-4.

Defendant's convictions arose from a conspiracy between Petitioner and Co-defendants Kristina Cole and Montez Mullins to distribute 441.17 grams of methamphetamine that had been shipped from California to Co-defendant Cole's address located approximately 200.62 feet from Raleigh-Bartlett Meadows Elementary School. *Id.* at *1-3. Officers from the Bartlett Police Department ("BPD") intercepted the package, addressed to "Bailey Green" and containing children's clothing and methamphetamine, after receiving information from a detective in Visalia, California, obtaining a search warrant for Co-defendant Cole's residence, and conducting a "controlled delivery" of the package. *Id.* at *1. Inside the residence, officers found evidence of several forms of communication between Co-defendant Cole and Petitioner, and observed a picture of Petitioner wearing a prison uniform on the nightstand in the bedroom. *Id.* Officers also found prepaid debit/credit cards and recovered three cell phones and a laptop that Co-defendant Cole had used to track the package through the FedEx website. *Id.*

Although Petitioner was incarcerated at the time the methamphetamine was shipped to Co-defendant Cole, he communicated with her through text messages from various phone numbers sometimes labeled as "BooBear," "New BooBear" or "Line Boo Other" in Co-defendant Cole's contact list. *Id.* at *2. Law enforcement also recovered a photograph of Petitioner in a jail cell that had been sent to Co-defendant Cole's HTC cell phone and another photograph of Petitioner sent to Co-defendant's LG cell phone. *Id.* There were also text messages that referenced transferring money into accounts or purchasing prepaid credit/debit cards. *Id.* A phone number labeled as "Line Boo Other" continuously called Co-defendant Cole's LG phone during the search of her residence. After Petitioner's brother arrived at the residence, the same number, labeled as "J" in his contact list, called Petitioner's brother. *Id.* On the day of the controlled delivery, Co-defendant Cole sent the following text messages to Petitioner: "Package arrived[,]" "They put the wrong street name. Lucky they knew what it was suppose [sic] to be[,]" and "What do you want me to do with it?" *Id.* That same day, Investigator Andrew Brown with the Tennessee Department of Correction saw Petitioner flushing a cell phone down the toilet in Petitioner's cell at the Riverbend Maximum Security Prison, and he recovered a cell phone charger. *Id.* at *4.

The recordings of Co-defendant Cole's outgoing calls with Petitioner after her incarceration reveal that Petitioner told her that he had money for a lawyer to get her "out." *Id.* at *3. He also said that "[Co-defendant Mullins] did this s**t" and lied to Co-defendant Cole by telling her that the package contained jewelry and that Co-defendant Mullins was going to "admit to it." Petitioner further told Co-defendant Cole, "They can't hold you accountable for what you don't know." *Id.*

Co-defendant Mullins was interviewed by BPD Detective Robert Christian and said that while incarcerated at the "Northeast penitentiary," he met another inmate named "Angel" who offered to pay him $600 to provide an address in Memphis. *Id.* Co-defendant Mullins said that Angel told him the package would contain "ice," or crystal

methamphetamine. He then contacted Co-defendant Cole and asked if he could send a package with a gift of jewelry for his mother to her address. Co-defendant Cole agreed, and Co-defendant Mullins gave her address to Angel. *Id.* Co-defendant Mullins told Detective Christian that Angel gave him $300 through PayPal and promised to give him an additional $300 after the package was delivered. He said that Angel also provided a tracking number for the package, which he gave to Co-defendant Cole. *Id.* A few days later, Co-defendant Mullins received a text message from Co-defendant Cole informing him that the package had arrived, despite having the wrong address. *Id.* Co-defendant Cole told Detective Christian that he informed Angel that the package had arrived, and he attempted to call Co-defendant Cole. When he was unable to reach her, Co-defendant Mullins called "Co-defendant Cole's 'husband,' [Petitioner]." *Id.* Co-defendant Mullins said that he met Co-defendant Cole through Petitioner and that Co-defendant Cole was unaware that the package sent to her address contained methamphetamine. *Id.* at *4. Detective Christian asserted that he did not believe that Co-defendant Mullins was completely truthful during the interview because he said "honestly" and "I swear to God" frequently. *Id.*

Petitioner subsequently filed an unsuccessful petition for post-conviction relief. This court upheld the denial of that petition on appeal but remanded for the entry of amended judgments that properly reflected the offenses for which Petitioner was indicted and convicted. *White v. State*, No. W2022-01437-CCA-R3-PC, 2023 WL 6142444 (Tenn. Crim. App. Sept. 20, 2023), *perm. app. denied* (Tenn. Apr. 11, 2024). As relevant to this appeal, the petition included claims that trial counsel was ineffective for failing to investigate the time of Co-defendant Cole's arrest, the execution of the search warrant, and the sending of three text messages from Detective Mark Gaia, and for failing to use this evidence to impeach the detective. *Id.* at *21. Petitioner argued that Detective Gaia sent three text messages to Petitioner from Co-defendant Cole's phone. Concerning the text messages, this court observed that Petitioner elicited testimony at trial that Detective Gaia sent the third text message from Co-defendant Cole's phone. This court further concluded that "the weight of the other evidence presented at trial suggests the results of a potential investigation by Counsel would not have affected the jury's verdict even if the investigation showed Detective Gaia sent one or both of the other texts." Therefore, Petitioner failed to establish prejudice. *Id.* Petitioner further argued that trial counsel was ineffective for failing to secure Co-defendant Mullins as a witness at trial. *Id.* at *19. This court found:

> Although [Co-defendant] Mullins's indictment precluded Counsel from calling him as a witness, [Co-defendant] Mullins's statement was still admitted at trial. On direct appeal, this court observed, "In the confession, Co-defendant Mullins stated that [Petitioner's] only involv[e]ment in the offenses was by introducing Co-defendant Mullins to Co-defendant Cole at some point in the past and when Co-defendant Mullins called [Petitioner] after he could not reach Co-defendant Cole." *White*, 2019 WL 549652, at *9. "Thus, the confession served to exculpate [Petitioner]." *Id.* When asked

- 3 -

by the State whether this proof would "have been the testimony you would have hoped to have presented had [Co-defendant Mullins] been a witness for you at trial, versus a co-defendant," Counsel replied, "Yes, and that is why we had him on the transport order to come down and testify."

*Id.* at \*20. Therefore, this court concluded that Petitioner failed to show that trial counsel was deficient in "failing to prepare a strategy-based defense," and because Co-defendant Mullins's statement was introduced even though he did not testify at trial, Petitioner failed to show prejudice. *Id.*

On June 28, 2023, Petitioner filed a petition for writ of error coram nobis and attached an affidavit from Co-defendant Cole. In the affidavit, Co-defendant Cole asserted that she did not electronically track the package delivered to her residence, that she did not send any text messages from her phone after her arrest, that the text messages were sent to a phone belonging to Co-defendant Mullins, that Co-defendant Mullins gave a statement that the phone number was his and that he was the caller who spoke to Detective Gaia during a phone conversation after Co-defendant Cole was arrested and handcuffed, and that Petitioner knew nothing about the package being sent to her. Petitioner also attached Co-defendant Cole's "arrest ticket" which he claimed showed that she had not sent the text messages because they were sent from her phone after her arrest. Petitioner further argued that the affidavit and arrest records were newly discovered evidence of actual innocence demonstrating that Detective Gaia sent the text messages from Co-defendant Cole's phone. Petitioner asserted that he could have used the evidence to impeach Detective Gaia.

The error coram nobis court summarily dismissed the petition finding that the affidavit was submitted as impeachment evidence that was provided after Petitioner's conviction, sentencing, and appellate review. The court also found that the affidavit was not credible and was thus not "newly discovered evidence." The court further concluded:

Even if the Court were to consider the affidavit to be credible, the content and basis of the affidavit have been heavily litigated during the trial and post-conviction stages of litigation. [ ] Petitioner states that [Co-defendant] Cole's arrest record corroborates the content of the affidavit. This arrest record was known of, and available to Petitioner at trial. Petitioner contends that the information in the affidavit was not available because [Co-defendant] Cole did not testify and Petitioner could not compel her to testify because she was a co-defendant. However, [ ] Petitioner references [Co-defendant] Cole's text message logs which would have shown when the texts were sent. This, along with [Co-defendant] Cole's arrest record, would have corroborated the assertion that [ ] Petitioner was not texting [Co-defendant Cole] about the narcotics at issue. The text logs, the arrest records, the testimony of, and opportunity to cross-examine Detective Gaia were all available at trial. The only thing this affidavit adds is the convenient addition

- 4 -

that the co-defendant now asserts that she witnessed Detective Gaia using her phone to send the messages. Again, the Court does not find this addition to be credible.

By failing to establish that the information presented qualifies as "newly discovered evidence," [    ] Petitioner does not make reach [sic] the further determination of whether said evidence would have resulted in a different verdict.

**Analysis**

Petitioner argues that "this matter should be remanded back to the trial court, as it is clear that the trial court has engaged in making witness credibility determinations without ever having a hearing to determine the credibility of the witness." He essentially asserts that he is entitled to equitable tolling because Co-defendant Cole's affidavit "makes it clear that Detective Gaia was not being truthful when he testified and has made very serious and material misrepresentations which led to [Petitioner's conviction]" and that he had no means of getting this information sooner because Co-defendant Cole was represented by counsel. Petitioner also suggests that "key evidence was withheld from the defense[.]" The State argues that the coram nobis court properly denied the petition because it is time-barred, and Petitioner "has not shown that he is entitled to due process tolling of the statute of limitations." We agree with the State.

The writ of error coram nobis is "an *extraordinary* procedural remedy," and is subject to a one-year statute of limitations which is measured from the date the judgment becomes final. *Nunley v. State*, 552 S.W.3d 800, 816 (Tenn. 2018) (quoting *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999)); *see also* T.C.A. § 27-7-103. Compliance with the one-year statute of limitations is an "essential element of a coram nobis claim." *Nunley*, 552 S.W.3d at 828 (quoting *Harris v. State*, 301 S.W.3d 141, 153 (Tenn. 2010)). Due process may require tolling of the statute of limitations if there is evidence to which the petitioner did not have access in order to timely assert a claim. *Workman v. State*, 41 S.W.3d 100, 102 (Tenn. 2001) (citing *Seals v. State*, 23 S.W.3d 272, 279 (Tenn. 2000)). A coram nobis petition must show on its face that it was timely filed pursuant to *Mixon*, or contain specific facts showing entitlement to equitable tolling pursuant to *Workman*. *Nunley*, 552 S.W.3d at 831.

The one-year statute of limitations may be tolled if a petition for a writ of error coram nobis seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period. *Id*. at 828-29. And "[i]n keeping with the extraordinary nature of the writ," a petitioner must set forth facts demonstrating that the claim arose after the statute of limitations would have started to run and that a strict application of the limitations requirement would deny him a reasonable opportunity to present his claim. *Id*. at 829.

The coram nobis court possesses the discretion to summarily dismiss a petition if it fails to show on its face that it is timely filed or that the averments merit due process tolling. *Id.* Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which is reviewed de novo with no presumption of correctness. *Id.* at 831. "The *inquiry ends* if his petition is not timely and if he has failed to demonstrate that he is entitled to relief from the statute of limitations." *Id.* (petitioner's other claims pretermitted by his untimely petition and failure to establish due process tolling) (emphasis added).

The record from Petitioner's direct appeal[1] shows that he filed a motion for new trial on January 9, 2018, which was denied by the trial court on January 30, 2018. Pursuant to *Mixon*, Petitioner was required to file his coram nobis petition on or before March 1, 2018. He filed his petition on June 28, 2023, more than five years after the one-year statute of limitations. Therefore, as argued by the State in its brief, the error coram nobis petition is untimely.[2]

In considering whether Petitioner's allegations merit equitable tolling of the statute of limitations, the record is clear that Co-defendant Cole's affidavit was not newly discovered evidence that could establish Petitioner's actual innocence. *Nunley*, 552 S.W.3d at 828-29.

> As a general rule, subsequently or newly discovered evidence which is simply cumulative to other evidence in the record, *see Scruggs v. State*, 218 Tenn. 477, 479-80, 404 S.W.2d 485, 486 (1966), or serves no other purpose than to contradict or impeach the evidence adduced during the course of the trial, *see Hawkins v. State*, 220 Tenn. 383, 392, 417 S.W.2d 774, 778 (1967), will not justify the granting of a petition for the writ of error coram nobis when the evidence, if introduced, would not have resulted in a different judgment.

> In exercising its discretion, the trial court must determine the credibility of the witnesses who testify in support of the accused's error coram nobis application. If the trial court does not believe that the witnesses presented by the accused are credible, the court should deny the application. Conversely,

---

[1] This court may take judicial notice of its own records. *State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009).

[2] We note that the coram nobis court did not address the timeliness of the petition in its order summarily dismissing the petition, and there is no response filed by the State to the petition in the technical record. However, this does not preclude us from considering the timeliness of the petition. *Nunley*, 552 S.W.3d at 831.

if the witnesses are credible, and the evidence presented would result in a different judgment, the trial court should grant the relief sought.

*State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. July 19, 1995) (citations omitted). The coram nobis court specifically found that Co-defendant Cole's affidavit was not credible.

We find nothing in the record to dispute the coram nobis court's conclusion that Co-defendant Cole's assertions in the affidavit were not credible. *See Taylor v. State*, 2006 WL 3831372, No. M2005-02897-CCA-R3-CO, at *7 (Tenn. Crim. App. Dec. 18, 2006). Co-defendant Cole asserts in her affidavit that she "did not speak before out of fear of retaliation because [her] co-defendant, [Petitioner], was shipped out of state and [she] worried that speaking out on [her] behalf would cause the same to happen to [her]." However, the record from Petitioner's appeal from the denial of his Tennessee Rule of Appellate Procedure Rule 10 application for extraordinary appeal shows that he was transferred and housed in a prison in New Mexico pursuant to the Interstate Corrections Compact, Tennessee Code Annotated § 41-23-104, due to safety concerns and Petitioner's continued threats of violence toward the district attorney general, trial counsel, correctional staff, and others. Therefore, Co-defendant Cole's claim that she feared being transferred out of state by "speaking out" was not credible based on the record.

As to Co-defendant Cole's claim that she did not track the FedEx package that was sent to her residence, Detective Gaia testified at trial that he recovered a laptop during the search of Co-defendant Cole's residence showing that the package had recently been tracked on the FedEx website. *White*, 2019 WL 549652, at *1. Additionally, Co-Defendant Cole claimed that Petitioner had no knowledge of the package sent to her residence and its contents. However, the evidence presented at trial showed that Petitioner and Co-defendant Cole were in a romantic relationship, and Co-defendant Mullins referred to Petitioner as Co-Defendant's Cole's "husband." *Id.* at *1-3. There was also a picture of Petitioner that appeared to have been taken in a jail cell sent to Co-defendant Cole's phone. *Id.* at *2. On the day of the controlled delivery, Co-defendant Cole sent a text message to a contact listed as "Line Boo Other" in her phone stating: "Package arrived[,]" "They put the wrong street name. Lucky they knew what it was suppose [sic] to be[,]" and "What do you want me to do with it?" *Id.* The same contact also called Co-defendant Cole's phone continuously while Detective Gaia was talking to her and also called Petitioner's brother's phone after he arrived at the residence. *Id.* Petitioner was later seen flushing a cell phone down the toilet in his jail cell, and a phone charger was recovered. *Id.* at *4. During a recorded call after Co-defendant Cole's arrest, Petitioner told her that they would get some money and a lawyer to get her out of jail and that Co-defendant Mullins would take the blame for everything. *Id.* at *3.

As pointed out by the State, Co-defendant Cole had an incentive to provide favorable evidence for Petitioner and minimize the roles that she and Petitioner had in the

offense due to their relationship. The record supports the coram nobis court's reasons to discredit Co-defendant Cole's self-serving affidavit. Petitioner contends that that the coram nobis court was required to hold a hearing before determining whether Co-defendant Cole's affidavit was credible. However, our supreme court has held that "there is no requirement that trial courts hold an evidentiary hearing prior to dismissing a coram nobis petition if the petition 'fails to meet the necessary prerequisites for granting coram nobis relief.'" *Nunley*, 552 S.W.3d at 829 (quoting *Harris*, 301 S.W.3d at 153).

Even if Co-defendant Cole's affidavit were found to be credible, the information contained therein was not "newly discovered." As the coram nobis court concluded, "the content and basis of the affidavit have been heavily litigated during the trial and post-conviction stages of litigation." Co-defendant Cole's text logs and arrest records, the testimony of, and opportunity to cross-examine Detective Gaia were all available at trial, as was Co-defendant's Mullins statement indicating that Petitioner had no knowledge of the package. As pointed out by the coram nobis court, "[t]he only thing this affidavit adds is the convenient addition that the co-defendant now asserts that she witnessed Detective Gaia using her phone to send the messages." At Petitioner's post-conviction hearing, trial counsel acknowledged that Detective Gaia was impeached on cross-examination by admitting that he sent the third text message from Co-defendant Cole's phone. Trial counsel noted that this fact was omitted from the detective's direct examination, and made the detective look "shady." *White*, 2023 WL 6142444, at *21. Petitioner raised the claim at the post-conviction hearing that Detective Gaia sent all three text messages. Therefore, Petitioner has had information about the text messages since his trial, and Co-defendant Cole's affidavit does not qualify as newly discovered evidence.

Additionally, the information contained in Co-defendant Cole's affidavit serves no other purpose than to contradict or impeach the evidence presented at trial and does not justify granting the petition for error coram nobis. This evidence, if introduced, would not have resulted in a different judgment. *Hart,* 911 S.W.2d at 375; *White*, 2023 WL 6142444, at *21.

We conclude that Petitioner is not entitled to equitable tolling of the statute of limitations for his untimely petition and that the coram nobis court did not abuse its discretion by finding that Co-defendant Cole's affidavit was not credible and did not constitute newly discovered evidence and dismissing Petitioner's petition without a hearing. Petitioner is not entitled to relief.

**Conclusion**

For the foregoing reasons, the judgment of the coram nobis court is affirmed.

_____
JILL BARTEE AYERS, JUDGE